618 P.2d 1245 (1980)
289 Or. 803
STATE of Oregon, Appellant-Respondent,
v.
Jeffrey B. KNOWLES, Respondent-Petitioner.
TC 1136; CA 14735; SC 26735.
Supreme Court of Oregon.
Argued and Submitted April 9, 1980.
Decided October 21, 1980.
*1246 Mike Kilpatrick, Mount Vernon, argued the cause for respondent-petitioner. With him on the petition and brief were Milo Pope and Kilpatrick & Pope, Mount Vernon.
Robert C. Cannon, Asst. Atty. Gen., Salem, argued the cause for appellant-respondent. With him on the briefs were James A. Redden, former Atty. Gen., James M. Brown, Atty. Gen., and Walter L. Barrie, Sol. Gen., Salem.
Before DENECKE, C.J., and HOWELL, LENT, PETERSON and TANZER, JJ.
Argued and Submitted at Portland April 9, 1980.
LENT, Justice.
The issue is whether, under ORS 131.515(2), a conviction on a plea of guilty to unlawful possession of an elk bars a subsequent prosecution of the defendant for unlawfully taking a deer when both animals, freshly killed, had been discovered in plaintiff's possession at the same time and place.
The historical facts are not disputed. On December 3, 1978, an Oregon State Police officer followed signs of activity into a forested area in Harney County and came upon defendant and two companions in a remote area in possession of an elk and a deer. The defendant was leaning over the dead elk, apparently sawing off the horns. A deer lay nearby. Both animals appeared to have been freshly killed and gutted. Within 30 yards of the scene the officer found the place where the elk had been killed and gutted. The officer followed a blood trail left in the snow where the deer had been dragged for about 100 yards but did not follow the trail to its end because he was losing contact with the defendant and his companions. The officer then cited the three for illegal possession of an elk. He did not cite for the deer because he wished to consult with his superior officers on the matter.
The citation[1] ordered defendant to appear on December 5 in the Justice's Court at Burns in Harney County. Pursuant to the request of defendant, however, he and the officer appeared in that court on December 4, and defendant entered a guilty plea to the charge concerning the elk and was ordered to pay a fine.
Approximately a month later the officer "swore out a felony complaint" against defendant on the basis of the taking of the deer.[2] A preliminary hearing was held on this charge in February, 1979, and the defendant was ordered bound over to circuit court. In March, 1979, defendant was charged in circuit court by district attorney's information of a felony for the taking of the deer. Or.Const. Art. VII (Amend.), § 5(5). Upon defendant's motion the circuit court dismissed on the grounds of former jeopardy, and the State appealed. The Court of Appeals reversed, 43 Or. App. 567, 603 P.2d 1211 (1979), on the basis of State v. Hammang, 271 Or. 749, 534 P.2d 501 (1975). We there held that a conviction on a guilty plea to a charge of theft did not bar a subsequent prosecution for murder even if both offenses arose out of the same "transaction" and were triable in the same court and even if the prosecutor knew or reasonably should have known of the facts relevant to the murder at the time of the guilty plea to theft.
We allowed defendant's petition for review, ORS 2.520, 288 Or. 527 (1980), to *1247 consider whether our decision in Hammang has present validity under ORS 131.505 and 131.515.[3] Those sections of the code were not applicable to Hammang's prosecution although they were discussed in the various opinions in Hammang.
Some attention to the chronology of that case is necessary to point up the manner in which the various opinions treated the role of the statutes. On June 25, 1973, Hammang stole the gun used on that same day to kill another. The homicide was known to the police immediately. On the following day Hammang admitted to the police that at the time of the killing he had been in the car in which the victim was killed, and Hammang accused one English as the killer. On July 2 English was indicted for murder. On August 6 Hammang was convicted on a plea of guilty of the crime of theft of the gun. On December 11 English was convicted of negligent homicide for the killing. On December 21 Hammang was indicted for murder for the same homicide. The indictment alleged that Hammang had acted jointly with English in the shooting of the victim. Hammang's trial commenced and on March 15, 1974, Hammang moved to dismiss on the ground of former jeopardy. The motion was denied and, upon a jury verdict of guilty, he was sentenced to life imprisonment on March 21, 1974.
Hammang appealed, assigning as sole error the denial of his motion. Of the statutes in question, he cited in his brief only ORS 131.505(4), which defines "criminal episode." The state cited none of those statutes, asserting that they were not applicable because prosecution commenced prior to January 1, 1974. The Court of Appeals stated that the case presented the question whether the two criminal charges "were known or reasonably should have been known to the prosecution within the meaning of the double-jeopardy rule of State v. Brown, 262 Or. 442, 497 P.2d 1191 (1972)." The Court of Appeals affirmed, finding that there was ample evidence to support the trial court's implicit finding that the prosecution neither knew nor should have known of Hammang's participation in the murder at the time he pleaded guilty to theft. State v. Hammang, 19 Or. App. 265, 527 P.2d 137 (1974).
According to the majority opinion, this court allowed review
"in order to consider what level of prosecutorial knowledge of the possibility of two or more charges growing out of the same act or transaction is sufficient to bar a second prosecution under our ban on double jeopardy as expressed in State v. Brown, 262 Or. 442, 497 P.2d 1191 (1972)."
271 Or. at 751, 534 P.2d 501. The majority went on to note that in Brown this court had construed Oregon Constitution, Article I, section 12,[4] as meaning that a second prosecution is for the same offense and is therefore constitutionally barred if the charges arise out of the same transaction and could have been tried in the same court and if the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution. This court further observed that Hammang and the state disagreed as to whether there was the requisite prosecutorial knowledge and whether the theft and murder were part of the same act or transaction.
Having accurately stated the issue as framed by the parties and having stated the purpose of allowing review, the majority proceeded with an opinion which came to grips with neither matter. Rather, the majority distinguished and partly, at least, overruled Brown. The majority discussed the case in terms of the opinion in Brown and held the rule of Brown inapplicable

*1248 "because the first proceeding resulting in a guilty plea is initiated by the defendant himself and not by the state."
271 Or. at 756, 534 P.2d 501. Having found that the rule of Brown was not applicable to Hammang's case, the majority concluded:
"Since we find that defendant was not entitled to prevail upon his plea of former jeopardy, we need not determine if the theft of the murder weapon and the murder of Syverson constituted a single transaction or whether, if they did, this fact was reasonably known to the prosecutor."
271 Or. at 758, 534 P.2d 501.
The majority opinion referred to the statutes only to answer the dissenters' argument that ORS 131.505 and 131.515, if applicable, would require reversal of Hammang's conviction. The majority conceded that a "literal" reading of the statutes favors the dissenters' position, but held that a "literal" reading produced what the majority found to be an "absurd" result. The majority could find no legislative intent to produce the result required by applying the words of the legislature actually used and, therefore, refused to hold that Hammang had been "prosecuted for an offense" when he had been charged with theft and that action terminated in his plea of guilty.
In his dissent, Justice McAllister argued that if ORS 131.505 and 131.515 were applicable, their plain words required a finding in Hammang's favor if it were established that both the theft and murder arose out of the same criminal episode and if both offenses were reasonably known to the prosecutor when the first prosecution was commenced. Justice McAllister concluded that the statutes did not work a change in the rule of Brown and, therefore both Brown and the policy expressed by the soon to be operative statutes required reversal.
In his separate dissent, Justice Tongue agreed with the majority that the result produced by a literal application of the statutes was "unreasonable" but, since the language of the statutes was clear and unambiguous, that language should be given effect "even though the result is one which the legislature did not intend." He expressed concern over the policy of a court rejecting the result conceded to flow from the plain words of a statute because that result appears to the court to be unreasonable.
This review of Hammang establishes only that the case is not dispositive of the case at bar, for the discussion in Hammang concerning the statutory law now in effect was nothing but dictum. It remains for the court to determine in the case at bar what effect the statutes have on this case. There is no need to decide this case under either Brown or Hammang, which both predate legislative rules applicable to this case.
The statutes applicable are:
"ORS 131.505. As used in ORS 131.505 to 131.525, unless the context requires otherwise:
"(1) `Conduct' and `offense'[[5]] have the meaning provided for those terms in ORS 161.085 and 161.505.
"(2) When the same conduct or criminal episode violates two or more statutory provisions, each such violation constitutes a separate and distinct offense.
"(3) When the same conduct or criminal episode, though violating only one statutory provision, results in death, injury, loss or other consequences of two or more victims, and the result is an element of the offense defined, there are as many offenses as there are victims.
"(4) `Criminal episode' means continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective.

*1249 "(5) A person is `prosecuted for an offense' when he is charged therewith by an accusatory instrument filed in any court of this state or in any court of any political subdivision of this state, and when the action either:
"(a) Terminates in a conviction upon a plea of guilty; or
"(b) Proceeds to the trial stage and the jury is impaneled and sworn; or
"(c) Proceeds to the trial stage when a judge is the trier of fact and the first witness is sworn.
"(6) There is an `acquittal' if the prosecution results in a finding of not guilty by the trier of fact or in a determination that there is insufficient evidence to warrant a conviction."
"ORS 131.515. Except as provided in ORS 131.525 and 131.535:
"(1) No person shall be prosecuted twice for the same offense.
"(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court.
"* * *"[6]
Defendant's position is that the statutes and the rule of Hammang are in conflict and the courts must dispose of his case under the statutes. The state's position apparently is that Hammang is in point, that this court there anticipated a construction of the statutes and that that construction requires rejection of the plea of former jeopardy.
More specifically, defendant relies upon a claim of immunity from prosecution under ORS 131.515(2).[7] The policy underlying that subsection is that there should not be unnecessary separate trials stemming from conduct which constitutes more than one offense.[8] The policy is to be effectuated by a rule of compulsory joinder.[9] If the prosecutor fails to accomplish that joinder, the sanction for that failure is statutory prohibition of subsequent prosecutions. The subsection is not dependent upon any constitutional text or concept; the subsection is an independent method of preventing prosecutorial harassment of a defendant who has committed multiple offenses in a single criminal episode.
In determining whether this defendant is entitled to the benefit of the statute, we should first inquire whether he has been "prosecuted for an offense" with respect to the elk, for if there was no prosecution there, this prosecution with respect to the deer cannot be the separate prosecution proscribed by the statute.
The statutory scheme, including ORS 131.505(5)(a), is clear. Defendant was prosecuted for the offense of unlawful possession of the elk when he was charged with that offense by an accusatory instrument, namely, the "Oregon Uniform Game * * * Citation and Complaint," in Justice's Court in Burns, Oregon, and that action terminated in conviction upon his plea of *1250 guilty. ORS 131.005(1) and ORS 131.505(5)(a). Insofar as dictum in our decision in Hammang is to the contrary, it is overruled.
Having determined that defendant was prosecuted for an offense with respect to the elk, we inquire whether all three of the elements necessary to the statutory bar of a separate prosecution exist. If any of the three are not established, the claim of former jeopardy under ORS 131.515(2) must fail. The disposition of this particular case is determined by considering the element of prosecutorial knowledge.
Defendant urges that the "appropriate prosecutor" must mean the police officer. The state contends that the term means the district attorney. We agree with the state's position. ORS 8.650 provides that the district attorney is the public prosecutor in each county, and ORS 8.660 provides that he shall conduct all prosecutions on behalf of the state except in the prosecution of certain traffic infractions. But is he the "appropriate" prosecutor?
The respective commentaries to the various preliminary drafts of the statute now codified as ORS 131.515(2) use the term "district attorney" and "prosecutor" interchangeably. The matter was specifically addressed at the October 14, 1971, meeting of the Criminal Law Revision Commission, Subcommittee 1. As we have previously noted, the extensive minutes of the Commission and its subcommittees provide a rich source for determination of the drafter's intent, State v. Garcia, 288 Or. 413, 416, 605 P.2d 671, 673 (1980). The minutes of the October 14, 1971 meeting reveal:
"Mr. Johnson [then Oregon Attorney General] requested a clarification of the term `appropriate prosecutor' as used in subsection (2) and was told by Mr. Gustafson [Reporter for the Former Jeopardy Draft] that this language was taken from the Model Penal Code and meant that if a person committed an offense in County A, the district attorney of that county would be the `appropriate prosecutor.' * * *"
In addition, throughout the several minutes of various meetings of the subcommittee and the full commission, one will search in vain to find any other meaning ascribed to the "appropriate prosecutor" other than that of district attorney. Indeed, there is discussion as to whether the district attorney is to be charged with constructive knowledge of what a police officer may actually know. If the commission had any idea that the term "prosecutor" referred to anyone other than a district attorney there would be no reason for such a discussion.
We believe it is clear that the intent of the drafter was to refer to the district attorney[10] and that the adjective "appropriate" was concerned with issues of mixed venue or jurisdiction. The "appropriate prosecutor" in this case, therefore, was the district attorney for Harney County.
The question which then arises is whether the prosecution with respect to the elk was "reasonably known" to the prosecutor. Since the trial judge ruled in defendant's favor on the motion to dismiss, we must assume that he found, as a historical fact, that the several offenses concerning the elk and the deer were "reasonably known" to the district attorney at the time of the commencement of the first prosecution. Compare, Ball v. Gladden, 250 Or. 485, 443 P.2d 621 (1968). An appellate court can reject that finding only if the court can affirmatively say there is no evidence to support the finding. Or.Const. Art. VII (Amend.), § 3. Defendant concedes that there is no evidence that the district attorney had actual knowledge of the two offenses at the time defendant was prosecuted with respect to the elk.
The adverb "reasonably" requires attention, for it is not clear what meaning was intended by the drafter. Resort to page 20 of the Final Draft and Report of the Criminal Law Revision Commission, November 1972, yields the reason for insertion of that adverb:

*1251 "Subsection (2) provides two protections for the prosecutor. The first is that the offenses must be known to the prosecutor. The purpose of this is to prevent the accused from concealing his total criminal activity within a criminal episode from the prosecutor and then asserting double jeopardy if the prosecutor should later discover and proceed against the remaining offenses.
"The Commission discussed the problem of the amount of knowledge that would be necessary on the part of the prosecutor. This raises a difficult issue in that the prosecutor may not have sufficient evidence to prosecute but still have knowledge that the offense exists. This would place the prosecutor in the dilemma of waiting for more evidence before he proceeded against the accused or foregoing the offense that he lacks sufficient evidence on.
"The modifying adverb, `reasonably,' was purposely inserted before the word `known' to accomplish the above two objectives. Hopefully, this would give the courts the power to determine if under the circumstances the district attorney should have included the offense in the criminal episode and hence in the former prosecution."
Defendant points to no evidence in the record from which it could be found that the district attorney "reasonably" knew of the offense concerning the deer at the time defendant was prosecuted with respect to the elk. Our own search for such evidence is likewise fruitless. We can, therefore, affirmatively say there is no evidence to support the trial court's implicit finding of the requisite knowledge on the part of the prosecutor.
Defendant does not rely upon a constitutional argument in his petition for review. State v. Brown and State v. Hammang, both supra, were concerned with the Oregon Constitution. In his petition for review, defendant states:
"* * * Moreover, also unlike the Hammang case, we are not here concerned with the ban on double jeopardy as expressed in State v. Brown. We are before this court in this case at this time discussing the ban on double jeopardy as expressed in Oregon Revised Statutes, Chapter 131. ORS 131.515(2) prohibits prosecution seriatim of multiple offenses growing out of the same criminal episode if they are known to the prosecutor at the time of the commencement of the first prosecution and if venue is proper in a single court. * * *"
There is no reason, therefore, to determine if a constitutional argument would be of avail to defendant. By so noting we do not express any opinion as to the merits of such an argument.
It follows that the decision of the Court of Appeals must be affirmed, but for the reasons expressed herein. The case must be remanded to the Court of Appeals to remand it to the circuit court for further proceedings.
Affirmed.
TANZER, J., specially concurred and filed an opinion.
TANZER, Justice, specially concurring.
I join my four colleagues in their statutory analysis, as far as it goes. It does not, however, go the dispositive distance. To say that this case presents no constitutional claim is to ignore the entire record and to deny defendant his due.
Defendant's assertion of his statutory right is not an abandonment or waiver of his constitutional right. He has asserted his constitutional right in the trial court, the Court of Appeals, and here. The quotation from his petition, upon which the majority relies to avoid the constitutional issue, merely reflects defendant's understanding that the double jeopardy statutes are broader than their constitutional counterpart. By pressing his statutory argument and retaining his constitutional argument as a fallback, defendant recognized that State v. Hammang, 271 Or. 749, 534 P.2d 501 (1975), is against him and that courts prefer a statutory rationale where possible. He has waived nothing.
*1252 Defendant has consistently, if not articulately, based his position on constitutional grounds as defined in State v. Brown, 262 Or. 442, 497 P.2d 1191 (1972). In the district court, he cited only two authorities, both cases based upon Art. I sec. 12 of the Oregon Constitution: Brown and State v. Sleeper, 36 Or. App. 227, 584 P.2d 333 (1978). The state appealed, stating the only "Question Presented" to be:
"Where two crimes arise out [of] the same transaction and/or criminal episode will a plea of guilty to one of the two crimes bar prosecution of the second offense under State v. Brown and State v. Hammang?"
Defendant responded that the statute protected him regardless of the rule in Hammang. Because of the posture of the case, it was unnecessary for him as respondent to reassert his constitutional argument. The Court of Appeals reversed, construing ORS 131.505(5) by reference to the analogous constitutional reasoning of Hammang. We allowed review to determine the applicability of Hammang. Again, defendant argued that the statute was broader than Hammang.
There is no hint in any of defendant's arguments in any court that defendant intends to abandon or waive his constitutional claim if his statutory argument fails. For the majority to so hold is, I believe, to play technical games with the defendant's rights. Because the entire court holds that the statute does not bar this prosecution, defendant's challenge requires us to reach the constitutional issue.
Moreover, the majority is avoiding the difficult and unpleasant task of facing up to a theoretically flawed body of constitutional law which developed commencing with our abandonment of traditional double jeopardy principles in State v. Brown. When faced with such a problem in the case law, we can either find a real or fancied technical reason to walk away from it, as the majority does here, or we can face up to it. Review is an opportunity to deal with such problems, not to avoid them. Accordingly, I am publishing my analysis as a separate opinion in the hope that it will cast some light when a future majority decides to tackle this bothersome issue.
It is axiomatic that the court will decide any case on a constitutional basis only if it cannot be resolved on a basis of lesser legal magnitude, usually statutory. In this case, however, that is more easily said than done. A purely statutory approach to the Oregon law of double jeopardy, such as that attempted by the majority, is impossible and misleading because the concepts embodied in our statutes regulating successive prosecutions have been adopted, explained and applied in our cases as constitutional doctrine.[1] Thus, it is impossible to determine the meaning and scope of the pertinent statutes without also examining constitutional case law. It is the preliminary purpose of this opinion to sort out what is statutory and what is constitutional in the Oregon law of double jeopardy.
Because the analysis is involved, an outline may be helpful so that the reader may follow my analytical path more easily. In brief, my opinion will demonstrate the following:
1. Oregon statutes embody both (a) the constitutional bar, and (b) an extended legislative bar on successive prosecutions.
2. In State v. Brown, 262 Or. 442, 497 P.2d 1191 (1972), we adopted a novel constitutional rule embodying both the constitutional and legislative elements of the statute. The fundamental logical error in Brown has led to logical error in succeeding cases.
3. In State v. Hammang, supra, we attempted to avoid the "absurd result" of literal application of the Brown rule. We adopted and applied the constitutional/legislative distinction embodied in the statute. In doing so, we overruled Brown, entirely, but said we did so only partially.

*1253 4. The holding in Hammang that a charge which terminates with a guilty plea is not a prosecution was error. A guilty plea entered without knowledge of the appropriate prosecutor is a prosecution, but it does not bar subsequent prosecution for other offenses arising from the same criminal episode.
5. The charges here are for two offenses, not for the same offense.

ORS 131.515 AND ITS HISTORY
I do not disagree with the statutory analysis by the majority, but my approach is different. The pertinent statute is ORS 131.515(1) and (2):
"(1) No person shall be prosecuted twice for the same offense.
"(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."[2]
This statute was enacted by the 1973 legislature as part of a comprehensive revision of criminal procedure based upon the Proposed Criminal Procedure Code drafted by the Criminal Law Revision Commission. ORS 131.515 corresponds to section 27 of the proposed code which was enacted without change in wording.
The commentary of the Criminal Law Revision Commission explaining section 27 is instructive regarding legislative intent. The Commission took pains to explain that the origins of subsections (1) and (2) are different: subsection (1) is constitutional;[3] subsection (2) is legislative.
"Subsection (1) restates the double jeopardy provision of Article I, § 12, Oregon Constitution. This draft does not attempt to `torture' the words `same offense' into the meaning, `same transaction.' To do so would overturn many Oregon cases. Instead, the draft follows the cases concerning `same offense' but expands compulsory joinder of related offenses in subsection (2).
"* * *
"Subsection (2) states the general policy that a person shall not be unnecessarily subject to multiple trials. Generally this idea has been attached to the double jeopardy clause under the so-called `same transaction' test. Here, the consideration of fair trial and due process of law should be ample basis for restricting separate trials for the same criminal episode. * *" Commentary, § 27 at p. 20.[4]
The recognition by the Commission that the constitutional prohibition of double jeopardy in subsection (1) and the legislative "general policy" against multiple prosecutions are distinct concepts was analytically correct. This follows because subsection (2) contains two exceptions that are immaterial to whether multiple prosecutions are for "one offence": (1) knowledge by the prosecutor of other offenses committed as part of the same episode, and (2) venue in the same court. The constitutional bar against double jeopardy embodied in subsection (1) has no exception for cases involving unknowing prosecutors. Nor does the constitutional bar except cases with different venue. The bar of Article I, section 12 of the Oregon Constitution is absolute within *1254 the scope of its application; without exception, absent a waiver, successive prosecution for the "same offense" is barred. There can be no valid statutory exceptions to a constitutional prohibition. State ex rel. Oregonian Publishing Co. v. Deiz, 289 Or. 277, 613 P.2d 23 (1980).
Exceptions can only apply to a bar to prosecution which is beyond the scope of the constitutional bar. The Commission recognized correctly that subsection (1) embodies an absolute constitutional bar against double jeopardy regardless of prosecutor's knowledge and rules of venue, and that subsection (2) is a legislative protection arising from "general policy" considerations of "fair trial and due process of law" regulating a class of multiple prosecutions in addition to that which is barred by the double jeopardy clause. The distinction, however, was not preserved in State v. Brown.

STATE V. BROWN ANALYZED
Any attempt at straightforward statutory analysis of double jeopardy founders on our decision in State v. Brown, because that opinion interwove separate statutory and constitutional strands of the Oregon law of double jeopardy. A review of the Brown opinion is instructive.
In Brown, a plea of former jeopardy to a charge of being an exconvict in possession of a firearm was upheld after a previous conviction on a guilty plea for carrying a concealed weapon, both charges arising from the same incident. The court initially recognized the traditional "same evidence" test: former jeopardy exists if one charge requires proof of elements identical to those which prove the other charge, see, e.g., State v. McDonald, 231 Or. 48, 365 P.2d 494 (1961) cert. den. 370 U.S. 903, 82 S.Ct. 1247, 8 L.Ed.2d 399 (1962). It then stated that the test was not firmly established in Oregon or federal constitutional law, but cited no Oregon or federal cases casting doubt upon it or establishing any other constitutional test. It stated generally that the purpose of the double jeopardy clause was protection against harassment by successive prosecutions. It then concluded, without explanation, that the "same evidence" test did not adequately provide such protection.
To formulate a new and satisfactory constitutional rule to provide supplemental protection, the court in Brown looked to the "same transaction" test as embodied in statutes (not constitutional law) from a few other states, the American Law Institute Model Penal Code Proposal, and, particularly, section 27 of the Proposed Criminal Procedure Code, which was later enacted as ORS 131.515. The court expressly recognized that the proposed Oregon statute would bar prosecution more extensively than the New York statute, the Hawaii rule or the Model Penal Code because it would require joinder of charges of offenses with different elements directed at different evils. Nevertheless, it then adopted the concept of subsection (2) of the proposed statute, with some word changes, as constitutional doctrine:
"* * * We hold, therefore, that under Article I, Section 12, of our constitution, a second prosecution is for the `same offense' and is prohibited if (1) the charges arise out of the same act or transaction, and (2) the charges could have been tried in the same court, and (3) the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution." 262 Or. at 457-58, 497 P.2d 1191.
The change in wording is significant because it points up the logical and semantic consistency of the statutory formulation compared to the inconsistency of the newly announced constitutional rule. The words of the proposed statute recognized that multiple offenses may arise from one transaction:
"No person shall be separately prosecuted for two or more offenses based upon the same criminal episode * *." (Emphasis added.)
In contrast, the Brown rule is that two or more offenses constitute the same offense if they arise from the same transaction:
"* * * [A] second prosecution is for the `same offense' * * * if * * * *1255 the charges arise out of the same act or transaction * * *." (Emphasis added.)
The semantic illogic is obvious. We later characterized it succinctly as "the one transaction-one offense equation."[5] It is this shift in meaning, equating "same offense" with all the offenses arising from the same "transaction," which this court later abandoned in Hammang.
The Brown rule is unsupportable not only because it fails to give the phrase "same offense" its plain meaning, but also because it suffers from the two logical infirmities which the Criminal Law Revision Commission avoided: whether prosecutions are or are not for the "same offense" has nothing to do with (1) the state of the prosecutor's knowledge, or (2) the jurisdictional rules of a statutory two-level trial court system. Those two qualifications are valid only under subsection (2) of the proposed statute because it purports to limit reprosecution as a matter of statutory policy, not as an absolute constitutional bar.
In redefining "offenses" to mean "transaction," we adopted in Brown a novel rule of constitutional law for Oregon at variance with every other American jurisdiction, citing no authority or precedent of constitutional law in Oregon or elsewhere. Because the theory was flawed, its application was troublesome. Indeed, in State v. Boyd, 271 Or. 558, 562, 533 P.2d 795 (1975), we recognized "the confusion and perplexity which has followed in the wake of our decision in State v. Brown." Rather than reconsider that decision in Boyd, however, we formulated a mechanical procedure to attempt to avoid injustice.
In the year following our decision in Brown, the legislature enacted ORS 131.515, 1973 Or. Laws, ch. 836, § 27, but the subsequent case law has consistently focused on the Brown constitutional doctrine and tended to ignore the statute. Hence, constitutional cases cannot be avoided in the disposition of this case.

STATE V. HAMMANG ANALYZED
A critical issue of this case under either the constitutional or the statutory rule is whether defendant's former conviction based on his guilty plea bars this subsequent prosecution in light of State v. Hammang, supra. There, the defendant's earlier conviction for theft of a gun was held not to bar prosecution for murder with that gun because the theft conviction was based on the defendant's guilty pleas.[6] The rationale of the majority opinion was based on Brown. Two judges dissented on the basis of ORS 131.515(2) and the majority responded by explaining the statute. Thus, Hammang begins as a constitutional opinion and, without explanatory transition, ends as a statutory one. To determine the application of Hammang to this case and its effect on the continuing validity of Brown, it will be profitable to examine the opinion closely.
The Hammang opinion begins by noting that Brown proscribes multiple prosecutions, but not multiple charges. Only when the prosecution of a charge commences does Brown require consolidation of all charges to avoid jeopardy in bar of a future prosecution. 271 Or. at 755, 533 P.2d 795. Assuming no unreasonable delay, the determination of when to commence prosecution of each charge is for the state. Hence, a guilty plea to one charge cannot be given the effect of restricting the state's control over initiation of prosecution.[7] The opinion *1256 goes on to reason that there is no undue harassment by successive prosecution where the first is commenced and adjudicated on defendant's guilty plea:
"It is true that a prosecution following a plea of guilty subjects the defendant to two proceedings and two convictions, but the danger of undue harassment seen in State v. Brown is not present because the first proceeding resulting in a guilty plea is initiated by the defendant himself and not by the state. To recognize that defendant could cut off the state's right to prosecute for other crimes growing out of one transaction by his election to plead guilty to one of the charges would be to make a game out of the double jeopardy principle." 271 Or. at 756, 533 P.2d 795.
By treating the Brown doctrine as a policy rule to be applied where the policy requires and not applied where the circumstances do not threaten the danger which the policy is designed to avoid, this court in Hammang dealt with it as something very different than an absolute constitutional bar. The court did not even treat the Brown doctrine as a bar which the defendant waived by his guilty plea.[8] Rather, it applied Brown as if it were in the nature of a rule of administration. Theoretically, Brown was severely undermined to the point of being silently overruled by the theory adopted in Hammang.[9]
Justices McAllister and Tongue dissented on the ground that subsequent prosecution should have been barred under ORS 131.515(2) if "both offenses" (note the inconsistency of that plural phrase and the Brown phrase in the singular, the "`same offense'") 271 Or. at 758, 533 P.2d 795, were reasonably known to the prosecutor and triable in the same court. They relied upon ORS 131.505(5)(a), which provides that one is prosecuted within the meaning of ORS 131.515(2) if the action "terminates in a conviction upon a plea of guilty." The dissenters would have remanded for a determination regarding the prosecutor's knowledge.
The majority responded to the statutory argument of the dissent by holding that ORS 131.505 and 131.515 are not contrary to its constitutional reasoning. It pointed out that the dissenters erred by their failure to distinguish between multiple prosecutions arising from the same offense and those arising from the same transaction. That distinction, however, had been eliminated by the "one transaction-one offense equation" of Brown. In so reasoning, the court in Hammang repudiated the wording change from the proposed statute to the constitutional rule which eliminated that distinction and formed the very heart of the Brown rationale:
"The position taken by the dissents that ORS 131.505 and 131.515 mandate a different result is based upon the failure to distinguish between cases of multiple proceedings involving a single offense and cases of separate prosecutions of offenses growing out of the same act or transaction. Once a defendant has been adjudged either guilty or not guilty of an offense, additional proceedings based upon the same offense are undoubtedly barred both because of double jeopardy and fundamental notions of res judicata. *1257 Such proceedings can achieve no result and are the clearest possible case of harassment. The situation, as we have already said, is entirely different when the double jeopardy doctrine is extended to require joinder of charges growing out of distinct offenses which are factually related. There is no reasonable possibility of harassment in such situations, and there is danger of grave injustice if defendants are allowed to pick the charges for which they may be punished." (Emphasis added.) 271 Or. at 756-57, 533 P.2d 795.
In determining the scope of ORS 131.505, the majority recognized, as it had not done in Brown, that subsections (1) and (2) of ORS 131.515 are, respectively, constitutional and legislative:
"* * * The legislature intended in ORS 131.515 to do two distinct things. In subsection (1) they restated the constitution which, up to that time, had been held to prohibit only multiple prosecutions based upon the `same evidence.' In subsection (2) they went further, disallowing the separate prosecution of two or more offenses growing out of the same criminal episode. * * *" 271 Or. at 757, 533 P.2d 795.
The majority went on, however, to hold that the legislature intended to apply the guilty plea definition of prosecution in ORS 131.505(5)(a) only to the constitutional rule embodied in subsection (1) and not to the statutory rule of subsection (2). In so doing, and in affirming the conviction, the court necessarily abandoned the wholly constitutional approach of Brown and adopted by application the two-level approach consisting of the traditional "same evidence" constitutional rule augmented legislatively by the "extended protection," 271 Or. at 757, 533 P.2d 795, of ORS 131.515(2). After Hammang, there was simply nothing left of the theoretical foundation of Brown.
What, then, is the state of the law in light of ORS 131.505, 131.515, Brown and Hammang? The effect of Hammang was (a) to abandon the reasoning of Brown as constitutional law, except as it might apply by analogy to ORS 131.515(2), and thereby (b) to return to a division between constitutional and statutory law, and (c) to hold that the termination of a prior charge by a conviction upon a guilty plea would not constitute jeopardy in bar of a subsequent prosecution for another offense committed as a part of the same act or transaction, but to imply that it would bar a subsequent prosecution for the same offense.

APPLICATION OF HAMMANG TO THIS CASE
The majority concludes that because Hammang is a constitutional case and this one is statutory, we need not consider it. They should have observed that we took review to consider the application of Hammang to this case and Hammang is what everybody has been arguing about. I would reach the issue.
The evidence at the hearing indicates that the state intends to prove that defendant was in unlawful possession of both animals at the same time and place. Although the two charges under the same statute, ORS 496.992, are phrased differently to reflect violation of different administrative rules, see OAR 635-65-760(8) and 635-65-765(7), both relate to the same public purpose and both involve the same general criminal objective. For that reason, I conclude that the charges are for offenses arising from the same criminal episode as that term is defined by ORS 131.505(4).[10] Therefore, the first consideration is the application of the legislative element of the statute, ORS 131.515(2).
A criminal proceeding culminating in a conviction upon a guilty plea is assuredly a *1258 "prosecution" as that word is used in common parlance. The dissenters in Hammang argued that such a conviction is also a prosecution under ORS 131.505(5)(a):
"(5) A person is `prosecuted for an offense' when he is charged therewith by an accusatory instrument filed in any court of this state or in any court of any political subdivision of this state, and when the action either:
"(a) Terminates in a conviction upon a plea of guilty * * *."
The majority in Hammang rejected that view. They reasoned that the ORS 131.505(5)(a) definition of prosecution applied only to the constitutional bar in ORS 131.515(1), not to the legislative bar of ORS 131.515(2), for two reasons. First, the commentary to the proposed code, in discussing the criminal episode rule, spoke only of "multiple trials." Second, the majority inferred that the legislature could not have intended the "absurd result" of allowing a defendant to bar prosecution of related charges by his guilty plea. 271 Or. at 757-58, 533 P.2d 795.[11]
The two reasons cited by Hammang are not persuasive. First, the reference of the commentary to prosecution by pleas of not guilty and trials does not mean that the statute excludes other prosecutions. Second, the "absurd result" can be avoided other than by giving a strained definition to words of otherwise specific meaning. I would conclude that the words "prosecuted" and "prosecution" as used in ORS 131.515(2) convey their ordinary meaning at least insofar as they include within their meanings convictions based upon guilty pleas. Thus, the definition in ORS 131.505(5)(a) applies to ORS 131.515. Defendant has been separately prosecuted.
The next issue is whether this prosecution is barred by ORS 131.515(1) as a separate prosecution for the same offense. Because of the wording and history of ORS 131.515(1) as set out above, I conclude that the scope of that subsection is coextensive with that of Art. I, § 12 of the Oregon Constitution. Therefore, at the least, if the proof of one charge necessarily proves the other charge, then, absent a waiver, a second prosecution is barred. Here, proof of illegal taking of a deer requires evidence of facts different than that which would have been required to prove the charge of illegal possession of an elk. Hence, by the so-called "same evidence" test, see State v. McDonald, supra, there is no former jeopardy for the same offense.
Because this is a separate prosecution for a second offense arising from the same criminal episode and because it could properly have been consolidated for trial with the first prosecution,[12] the next consideration under ORS 131.515(2) is whether the facts of the offenses were "reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution." The word "prosecutor" refers to the district attorney. The clear words of the statutes provide the answer; there is no need to go to the minutes of the drafters. The defendant admits that the district attorney did not know of the case at the time of the first proceeding, but he contends that in the prosecution of a minor charge, the policeman is the prosecutor. Defendant's contention is incorrect in light of ORS 8.650, which provides:
"The district attorney in each county is the public prosecutor therein * * *."
The word "appropriate" was intended to forestall problems in cases of mixed venue and jurisdiction. It does not operate in the absence of a prosecutor to convert a police officer into the prosecutor. Here, the defendant called the police officer to court and pleaded guilty without the knowledge of the appropriate prosecutor. Hence, the *1259 earlier conviction does not bar this prosecution by operation of ORS 131.515(2).
Although the series of opinions discussed above have chipped away at our holding in State v. Brown, I may safely observe that the court retains its primary concern in Brown that the same evidence test alone may not provide "a realistic limitation on successive prosecutions by the state." 262 Or. at 457, 497 P.2d 1191. Some broadening of the same evidence test is required. It would be premature, particularly in a separate opinion, to attempt to lay out in a concurring opinion a definitive exposition of the scope of Art. I, § 12, but it is appropriate to observe that a basic concept of extended protection is well established in our recent case law regarding multiple prosecution, notwithstanding the precedential misstatement in Brown.
In State v. Cloutier, 286 Or. 579, 596 P.2d 1278 (1979), we recognized that the manner in which the law deals with a person who commits multiple related offenses does not reflect a single, consistent policy or approach. Rather, separate bodies of statutory and common law have developed independently to deal with each aspect of the one problem. Separate strands of law regulate joinder of counts for indictments, merger or multiplicity of offenses in indictments, joinder for trial, severance for trial, merger of included offenses upon conviction, sentencing for related crimes, double jeopardy and successive prosecution for related offenses. All are aspects of the same general problem, but each has been the subject of separate case law development, often without relation to the other aspects. An example of conflicting development is the law of joinder and the law of severance of counts for trial, each of which deals with the opposite side of precisely the same problem. Yet joinder and severance law are in such irreconcilable conflict with each other, see State v. Brown, supra, and State v. Leverich, 269 Or. 45, 522 P.2d 1390 (1974), that we were able to resolve the conflict only by creation of a mechanical procedure which operates without regard to the rights of the state or the interest of the courts in the efficient administration of justice. State v. Boyd, supra.
With such theoretical fragmentation, one would expect the case law to yield different answers to the same question at different stages of the proceedings (e.g., factually related burglary and attempted theft may be the subject of separate counts, but not of separate sentences). As the survey in Cloutier shows, however, there is a high degree of harmony in the results of our case law and the unifying factor appears to be our consistent intention to effectuate express or inferred legislative intent.
It is fundamental that we look to legislative intent to determine whether conduct constitutes an offense because an offense exists only if it has been statutorily defined. ORS 161.505 acknowledges this simple premise:
"An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state. * * *"
Whether related conduct which offends one statute is one offense or is divisible into more than one offense depends upon the statutory definition of the offense. Sometimes the statutes are explicit. For example, a simultaneous assault upon two persons would be two offenses because ORS 131.505(3) so provides:
"When the same conduct or criminal episode, though violating only one statutory provision, results in death, injury, loss or other consequences of two or more victims, and the result is an element of the offense defined, there are as many offenses as there are victims."
Also, sometimes the statutes specify that each day or other time period of continuing criminal conduct is a separate offense. See Cloutier, 286 Or. at 598, 596 P.2d 1278. The inquiry remains the same if the applicable statutes are not explicit; generality of statutes simply makes the divining of legislative intent an imprecise process, subject to a degree of speculation and policy judgment, but one which we nevertheless perform. Our consistent approach in recent cases has been to look to the legislative formulation of the offense, whether explicit or implicit, to determine at various stages *1260 of prosecution whether conduct constitutes one or more offenses.[13]
In State v. Gratz, 254 Or. 474, 461 P.2d 829 (1969), we held that an indictment charging one robbery of two people in two counts to be valid on demurrer because the statutory purpose of the offense of robbery was intended to protect individual persons. In State v. Welch, 264 Or. 388, 505 P.2d 910 (1973), we held that two sentences based on two convictions on two counts for publishing two checks by making one bank deposit of two checks could not stand because the legislature, had it considered the matter, would not have intended more than one punishment; the case was remanded for a single sentence, but the opinion was silent as to the correctness of the multiple counts and multiple convictions. In State v. Gilbert, 281 Or. 101, 574 P.2d 313 (1978), we reversed the dismissal of indictments for theft by possessing weapons stolen from different owners although defendant had been acquitted on the first such indictment. We held that the first prosecution did not constitute former jeopardy because, we inferred, the legislature intended possession of each weapon to be a separate offense.[14] In so doing, we recognized that our task of statutory interpretation often involves policy judgment:
"* * * The intent of the legislature is seldom obvious. Therefore, when the court thinks it would be unfair to permit the defendant's conduct to be divided into several offenses, the court will not approve the division unless the legislature has clearly provided that it can be divided." (Citation omitted.) 281 Or. at 107, 574 P.2d 313.
It is also significant that in Gilbert we expressly did not imply a view regarding multiple sentences because, as we also pointed out in Cloutier, different legislative and constitutional policies apply to the adjudicative stage and the penal stage of the prosecution.
This review of Gratz, Welch and Gilbert demonstrates a consistent judicial approach at various stages of the prosecution in determining singularity or multiplicity of offenses arising from violation of one statute; in each case we discerned whether the legislature intended that the conduct constitute one offense or more. We followed that intent, not as a matter of judicial submission to legislative prerogatives, but, rather, because conduct is an offense only if the legislature so defines it. This approach, together with the traditional "same evidence" test, is also the essential basis for the merger doctrine developed by this court, see State v. Fish, 282 Or. 53, 577 P.2d 500 (1978), and State v. Roach, 271 Or. 764, 534 P.2d 508 (1975), as well as our rules regarding trial of lesser included offenses, see State v. Washington, 273 Or. 829, 543 P.2d 1058 (1975). They also provide a sound basis, practically and theoretically, for the application of ORS 131.515(1) and Art. I, § 12.
Because unlawful possession of an elk and taking of a deer out of season in violation of the same statute are not proved by the same evidence, it must next be determined whether the legislature intended that such conduct be one offense or two. The common victim is the state of Oregon. In a less technical sense, however, ORS 496.992 *1261 is intended to protect Oregon's animal life. These offenses involve distinct acts: the taking of one protected animal and the possession of another, killed at different times and places, albeit on the same day in the same general area. Because the crimes are Class A misdemeanors, ORS 496.992(2), the potential penalty for an offense involving one animal is substantial, but it would be disproportionately light if the unlawful killing of many animals on the same day could only be prosecuted as one offense,[15] although this observation might not apply to other protected species such as fish. For all these reasons, I infer that the legislature intended or, had it considered the problem, it would have intended[16] that the unlawful conduct involving each animal be a separate offense. Accordingly, I join with the majority to conclude that this is not another prosecution for the same offense and is not barred under ORS 131.515(1) by the former prosecution.
NOTES
[1] The officer issued an "Oregon Uniform Game, Commercial Fish and Marine Citation and Complaint." See, ORS 1.525(c).
[2] A second conviction within ten years of the first for illegally taking a game animal of the kind with which we are here concerned is a Class C felony. ORS 496.992(3).
[3] The sections were enacted by Oregon Laws 1973, chapter 836, sections 26 and 27. They were to apply to criminal actions and proceedings commencing upon or after January 1, 1974. Or. Laws 1973, ch. 836, §§ 2 and 358. The prosecution in State v. Hammang, 271 Or. 749, 534 P.2d 501 (1975) commenced prior to January 1, 1974.
[4] Or.Const. Art. I, § 12, provides:

"No person shall be put in jeopardy twice for the same offence [sic], * * *"
[5] ORS 161.085(4): "`Conduct' means an act or omission and its accompanying mental state."

ORS 161.505: "An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state. An offense is either a crime or a violation or a traffic infraction."
[6] ORS 131.515(3) deals with offenses of different degrees, lesser included offenses and attempts, none of which is involved in this case.
[7] Defendant does not assert ORS 131.515(1) is other than a restatement of the state constitutional guarantee against double jeopardy. The Criminal Law Revision Commission published its "FINAL DRAFT AND REPORT" (Report) of the proposed Oregon Criminal Procedure Code in November, 1972. The commentary contained in the Report is clear: "Subsection (1) reiterates the specific constitutional prohibition against double jeopardy." p. 19. We have no occasion in this case to test the accuracy of the commentary.
[8] See Report, page 19.
[9] See Report, page 20, for commentary explaining that subsection (2) was intended to "expand" compulsory joinder of "related offenses." Moreover, the legislative history indicates the same. The March 12, 1973, minutes of the Senate Judiciary Committee, page 2, show:

"CHAIRMAN BROWNE asked if section 27 was a joinder statute in addition to dealing with jeopardy. Mr. Paillette said it was a mandatory or compulsory joinder statute."
See, also, the May 7, 1973, minutes of the House Judiciary Committee.
[10] There is no occasion in this case to determine whose actual knowledge shall be imputed to the district attorney for purposes of the statute.
[1] And, conversely, a constitutional double jeopardy challenge has been resolved against the defendant by sole reference to the statutes. See State v. Gilbert, 281 Or. 101, 574 P.2d 313 (1978).
[2] Subsection (3) deals with lesser included offenses and is not relevant to this case.
[3] Art. I, § 12, Or.Const. provides:

"No person shall be put in jeopardy twice for the same offence [sic] * * *."
[4] The paragraph continues:

"* * * The Oregon Supreme Court recently held that, under the Oregon Constitution, `a second prosecution is for the "same offense" and prohibited if (1) the charges arise out of the same act or transaction, (2) the charges could have been tried in the same court, and (3) the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution.' State v. Brown, [262 Or. App. at 458, 497 P.2d 1191]. Although the opinion contains some obvious differences in language from that proposed here, the court does adopt the compulsory joinder concept."
State v. Brown and its interrelationship with this legislation is discussed hereafter in this opinion.
[5] State v. Boyd, 271 Or. 558, 563, 533 P.2d 795 (1975).
[6] The Court of Appeals had come to the same conclusion because the prosecutor did not have sufficient information for a murder charge against the defendant at the time of the guilty plea to theft. State v. Hammang, 19 Or. App. 265, 527 P.2d 137 (1974). This court did not rely upon that rationale.
[7] "* * * If the state has all the information it needs to prosecute each of the charges arising out of one transaction, there still is no constitutional requirement that the state proceed forthwith to consolidate the charges and begin the prosecution. And the state's duty to proceed is not enlarged by the circumstances that the defendant unilaterally decides to enter a plea of guilty to one of the charges. Unless the state does more than acquiesce in the entry of the plea of guilty, the state's options as to how it wishes to proceed remain the same. Thus, after the defendant pleads guilty to one of the charges, the state may thereafter prosecute the defendant for the other charges arising out of the same transaction. There is no duty on the part of the state to inform the defendant before he enters his plea of guilty that other charges arising out of the same transaction may be filed." 271 Or. at 755-56, 533 P.2d 795.
[8] Nor would I in this case reach the issue of whether a guilty plea constitutes a waiver of former jeopardy rights and, if so, under what circumstances.
[9] In a footnote, the Hammang opinion acknowledges that Brown is overruled insofar as it applies to former jeopardy based on guilty pleas, because Brown was also based on a guilty plea, but it goes on to say that the rationale of Brown is not repudiated. 271 Or. at 757 n. 4, 533 P.2d 795. In view of the majority's reply to the dissenters, however, it is hard to discern much of Brown's theory that remains.
[10] ORS 131.505(4):

"As used in ORS 131.505 to 131.525, unless the context requires otherwise:
"* * *
"(4) `Criminal episode' means continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."
[11] The failure to accord its literal meaning to the word "prosecution" is criticized in Cannon, Double Jeopardy in Oregon, 14 Will.L.J. 21, 36 (1977).
[12] The venue exception element of Brown has also been abandoned in favor of a more workable rule. In State v. Leverich, 269 Or. 45, 50-51, 522 P.2d 1390 (1974), we held that the Brown phrase "could have been tried in the same court" means "could properly be consolidated."
[13] Although the dissenting judge in Cloutier disagreed with the result of our application of the principles in Cloutier and State v. Woolard, 259 Or. 232, 484 P.2d 314, 485 P.2d 1194 (1971), to penal objectives, he endorsed the approach:

"[The pre Woolard rule] was a clear and workable rule and one which was based upon the assumption that it was the prerogative of the legislature to define crimes and to provide for punishment for each of such crimes. * * *
"* * *
"Consistent with that rule, this court has held that whether a defendant may in fact be convicted and sentenced for two offenses arising out of the same course of conduct depends upon the intent of the legislature in enacting the statutes creating the offenses." (Citations omitted.) 286 Or. at 605, 606-607, 596 P.2d 1278.
[14] State v. Clark, 46 Or. 140, 80 P. 101 (1905), holding to the contrary for purposes of indictment, was superseded by ORS 131.505(3) and implicitly overruled by Gilbert.

In Gilbert, the defendant's preliminary election to be tried separately on each charge obviated any problem under ORS 131.515(2).
[15] The information purports to charge a Class C felony, ORS 496.992(3), based on an alleged previous conviction of a game law violation within the past ten years. The previous conviction appears to be the earlier charge of unlawful possession of an elk. The Court of Appeals did not reach defendant's challenge to the use of that conviction to enhance this charge. In view of my having characterized this charge as a misdemeanor, it is appropriate to also note that I do not believe that the legislature intended that enhancement of the charge be based upon a prior conviction for another offense arising from the same criminal episode. Among other reasons, to hold otherwise would be to gut the defendant's right to severance of charges. See State v. Fitzgerald, 267 Or. 266, 516 P.2d 1280 (1973), State v. Boyd, supra.
[16] See State v. Welch, 264 Or. at 394, 505 P.2d 910.