Argued January 25, affirmed February 19, reconsideration denied March 27, petition for review denied June 11, 1974

# STATE OF OREGON, *Respondent, v.*
# WILLIAM C. ALLEN (No. C 73-06-1713 Cr),
## *Appellant.*

518 P2d 1332

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and TANZER, Judges.

SCHWAB, C. J.

The defendant upon trial by jury was convicted of criminally negligent homicide, ORS 163.145. The charge arose out of a collision between an automobile driven by defendant and a boy on a bicycle, as a result of which the boy died.

On appeal the defendant argues: (1) that his demurrer to the indictment should have been sustained on the grounds that the facts stated in the indictment do not constitute a crime; (2) that since,

prior to the commencement of the negligent homicide trial he had pleaded guilty in district court to driving while his operator's license was suspended, ORS 482.-650, at the time and place of the accident which caused the death, his plea of former jeopardy should have been sustained; and (3) that his motion for judgment of acquittal based upon the insufficiency of the evidence to make a jury question of criminally negligent homicide in the manner in which he operated his automobile should have been allowed.

■■ (1) Sufficiency of the Indictment.

The indictment for violation of ORS 163.145 read:

"The above-named defendant is accused by the Grand Jury of Multnomah County, State of Oregon, by this indictment of the crime of CRIMINALLY NEGLIGENT HOMICIDE committed as follows:

"The said defendant, on or about June 7, 1972, in the County of Multnomah, State of Oregon, did unlawfully and with criminal negligence cause the death of another human being, to-wit: Gregory Center, by:

"1. Driving a motor vehicle without keeping a proper lookout under circumstances then and there existing;

"2. Driving a motor vehicle without proper control thereof under the circumstances then and there existing;

"3. Driving a motor vehicle at a speed that was greater than reasonable and prudent under the circumstances then and there existing,
"* * *

"Dated June 8, 1973 * * *."

ORS 163.145 reads:

"(1) A person commits the crime of criminally negligent homicide when, with criminal negligence, he causes the death of another person.

"(2) Criminally negligent homicide is a Class C felony."

ORS 161.085 (10) states:

" 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

It follows that the indictment alleges that the defendant caused the death of another unlawfully and with "criminal negligence," a term which is clearly defined in ORS 161.085 (10). The indictment further alleges that the conduct which the state contends was criminally negligent was defendant's operation of a motor vehicle, and that this criminal negligence manifested itself in three ways—lack of a proper lookout, lack of proper control and driving at an unreasonable speed. The indictment is thus clearly sufficient to state a crime in that it not only alleges that defendant caused a death by driving in a criminally negligent manner, but further specifies the particular manner in which defendant's operation of the vehicle was criminally negligent, even though such particularity is not required. *State v. Andrews,* 16 Or App 144, 517 P2d 1062 (1974). There is no substance to defendant's argument that the allegations concerning the particular manner in which he was negligent necessarily charge him with only simple negligence. The indictment apprised defendant that the state intended to prove that he acted in stated particulars with such a degree of

negligence as to be guilty of criminally negligent homicide. *State v. Andrews,* supra; *cf., State v. Darlene House and James House,* 260 Or 138, 144-45, 489 P2d 381 (1971); *State v. Eaton,* 8 Or App 123, 492 P2d 506 (1972).

(2) Former Jeopardy.

■ Defendant contends that this prosecution for criminally negligent homicide is barred under the principles of *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972). This court has held that *Brown* is applicable to cases in which the original prosecution is for a traffic offense. *State v. Leverich,* 14 Or App 222, 511 P2d 1265 (1973), aff'd 99 Adv Sh 331, — Or —, 522 P2d 1390 (1974). However, even if we assume that driving with a suspended license is an act rather than a condition—an act which would invoke the *Brown* double-jeopardy doctrine as we interpreted it in *Leverich*—one of the *Brown* criteria is not present here. *State v. Brown,* supra at 457-58, states:

"* * * We hold, therefore, that under Article I, Section 12, of our constitution, a second prosecution is for the 'same offense' and is prohibited if (1) the charges arise out of the same act or transaction, and (2) the charges could have been tried in the same court, and (3) *the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution.*" (Emphasis supplied.)

Here, we cannot say that the prosecutor knew or reasonably should have known of the facts relevant to the negligent homicide charge at the time defendant pleaded guilty in district court to the driving-with-a-suspended-operator's-license charge. The accident occurred on June 7, 1972. The investigating police officer who came to the scene gave a citation to defendant, charging him with driving while his operator's license

was suspended, and directing him to appear in district court on the charge on June 28, 1972. The defendant appeared on the prescribed date and his plea of guilty on the charge was received during routine processing of traffic matters at which no representative of the district attorney's office was present, a procedure which a deputy district attorney testified was normal.

At the time of the guilty plea the police had not initiated a full-scale investigation into the fatal accident and had not notified the district attorney's office of any facts which would give rise to a potential felony prosecution. As a matter of fact, when, as a result of circumstances which we need not discuss here, the fact of the death and the question of whether a negligent homicide charge should have been brought first came to the attention of the district attorney's office (some time after the defendant's plea of guilty to the suspended license charge), a member of the district attorney's staff reviewed the files and police reports and decided that there was insufficient evidence to prosecute for negligent homicide. Later, the name of a witness, theretofore unknown to the police or the district attorney's office, was made known by private counsel representing the parents of the deceased boy. The matter was not presented to the grand jury and the indictment obtained until that witness disclosed information indicating criminal negligence on the part of defendant. Under these circumstances it cannot be said that the prosecutor knew or reasonably should have known of the facts relevant to the negligent homicide charge at the time of defendant's plea of guilty to the driving-with-a-suspended-license charge.

The defendant makes a point of the fact that

the deputy district attorney in charge of traffic prosecutions at the relevant time indicated that the district attorney's office was supposed to be notified by the police whenever a fatal accident occurred, and also that the individual who was district attorney at the time of the death testified that his office "should have been aware" of the fatal accident. Assuming that both the deputy and the former district attorney were correct, and there is evidence to the contrary so far as the deputy's testimony is concerned, the record indicates that even if the fact of the death and all of the information available to the police had been turned over to the district attorney's office immediately after the accident, they would not have had evidence which in their judgment was sufficient to prosecute for negligent homicide. Such evidence became known to them only when the previously unknown witness was made available.

■ (3) Sufficiency of the Evidence.

The accident happened during daylight hours in dry, clear weather, at a point about 60 feet east of the intersection of S.E. Powell Boulevard, which runs east and west, and 75th Street, which runs north and south. Powell Boulevard in the area of the accident passes through a mixed residential and business area and was posted for a 30-mile speed limit. The testimony most favorable to the state—testimony which in substantial part came from the tardily discovered witness—was as follows:

The boy who was killed was crossing Powell Boulevard diagonally from the northeast corner of the intersection at an angle which would have placed him on the other side of Powell Boulevard at a point 75 to 100 feet east of the intersection. The point of im-

pact was some 60 feet east of the intersection in the most southerly lane of Powell Boulevard. Powell Boulevard contains two lanes in each direction including the curb lanes. The defendant was travelling about 60 miles per hour when he went through a red light at the intersection of Powell Boulevard and 72nd Street, and continued at that speed straddling the two eastbound lanes of Powell Boulevard until he came upon a car stopped at the westerly edge of the Powell Boulevard and 75th Street intersection in the inside eastbound lane. The testimony of the driver of the stopped car was that she saw that the deceased and a companion were crossing Powell Boulevard east of the intersection and had stopped to allow them to proceed across her lane. The defendant, coming upon the stopped car, did not reduce his speed, but, rather, swerved into the southerly lane and as he did so, apparently seeing the boys ahead of him, applied his brakes, skidded from a point approximately beside the stopped car across the intersection to the point of impact some 60 feet east of the intersection, and continued his skid for an additional 72 feet before coming to rest with the bicycle under the car. The boy's body came to rest some 57 feet east of the point of impact. From this evidence the jury was entitled to find criminal negligence with regard to speed, control and lookout. *See, State v. Fitzgerald,* 242 Or 618, 411 P2d 261 (1966).

Affirmed.