STATE OF OREGON, *Respondent,*
*v.*
JOSEPH HARRIS, III, *Appellant.*
(No. C 77-12-17003, CA 10456)
587 P2d 498

S. Randall Johnson, Certified Law Student, Salem, argued the cause for appellant. With him on the brief were Gary D. Babcock, Public Defender, and Marianne Oswald, Deputy Public Defender, Salem.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

RICHARDSON, J.

**RICHARDSON, J.**

Defendant appeals his conviction for robbery in the first degree. He claims a violation of his constitutional guarantee to a speedy trial and in the alternative that his due process rights were violated by the delay in his indictment. Failing those arguments defendant seeks resentencing.

On August 16, 1977, an armed robbery occurred in a pharmacy in Portland. A description of the getaway vehicle was dispatched and shortly thereafter police officers noticed defendant's car, which fit the description, and followed it. They requested further description of the driver of the getaway car and were radioed that the driver was wearing a red warmup suit with blue gym shorts over the pants. Defendant parked the vehicle and left. The officers had begun to examine the vehicle and when defendant returned, they noted he was dressed in a red warmup suit with blue shorts. The officers told him that he matched the description they had been given of a participant in an armed robbery and asked him if he would return with them to the scene of the incident. He agreed. In the police car he was read the *Miranda*[1] warnings.

At the pharmacy, defendant was identified by a witness as one of the men involved. He was then taken to the police station for an interview. He told the detective that the police could search his car and home, and that he had been playing basketball at a local park when the incident occurred. He stated that he was new to the area and he did not know the identity of the other participants in the game. At this point the investigating detective concluded there was insufficient evidence to hold defendant and he was released. He had not been booked or charged with any offense, but was told that he was a suspect in the robbery.

Defendant was indicted December 1, 1977. He moved to dismiss the charge on December 22, 1977,

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

alleging denial of his right to a speedy trial. His motion was denied and he was tried January 9, 1978, and found guilty of first degree robbery by a jury on January 10, 1978. He was sentenced to imprisonment for a maximum 12 years. The court imposed a minimum term of six years under ORS 144.110(1).

■ Defendant argues that his right to speedy trial under the Sixth Amendment to the United States Constitution and Article I § 10 of the Oregon Constitution,[2] or in the alternative his right to due process granted under the Fourteenth Amendment, was violated. The basis of his claim is that in the four and one-half month delay between the incident and his trial, his alleged alibi witnesses became unavailable, and his ability to present his defense was unconstitutionally impaired.

Initially we must delineate those cases which are pre-accusatory from those which are post-accusatory, for the protections to be afforded in each instance are quite different. Broadly stated, the due process clause protects a person from unjust governmental delay in bringing the criminal action, while the speedy trial guarantee only protects those accused of a crime, and requires a delicate balancing of the factors set out in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972). The threshold question then becomes what event triggers the right to speedy trial.

Defendant argues this right attached at the time he was first taken into custody. In support of this position he cites *Dillingham v. United States,* 423 US 64, 96 S Ct 303, 46 L Ed 2d 205 (1975), which held that for purposes of speedy trial, defendant's rights vested at arrest. *Dillingham* was a *per curiam* opinion founded on *United States v. Marion,* 404 US 307, 92 S Ct 455, 30 L Ed 2d 468 (1971). The court in *Marion,* when

---

[2]The guarantee of speedy trial granted by Article I, section 10 of the Oregon Constitution has been treated as the equivalent of the right provided by the Sixth Amendment to the United States Constitution, when criminal cases are at issue. *State v. Ivory,* 278 Or 499, 504, 564 P2d 1039 (1977).

faced a period of three years between the offense and indictment, rejected defendant's speedy trial claim and stated:

"\* \* \* [I]t is readily understandable that it is either a formal indictment or information or else the actual restraints imposed *by arrest and holding to answer a criminal charge* that engage the particular protections of the speedy trial provision of the Sixth Amendment.

"Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant *who has been arrested and held to answer.* \* \* \*" (Emphasis added.) 404 US at 320-21.

*See also, State v. Serrell,* 265 Or 216, 219, 507 P2d 1405 (1973); *State v. Carter,* 24 Or App 829, 831, 547 P2d 194 (1976).

Under the present facts defendant's reliance on *Dillingham,* is misplaced. From a careful reading of *Marion* and its progeny, we conclude the essence of those decisions is that defendant was "held to answer" upon arrest, which was equivalent to an accusation of the crime. Such was not the circumstance here.[3]

Defendant was taken into custody and during the time he was questioned there was an interference with his liberty. As a result there may have been some element of anxiety and public obloquy. He was released without any obligation to return such as would be imposed by a release on bail or recognizance. There was no disruption of his employment, his finances were not drained and he was not held out to the public as an accused man. These temporary effects are not

---

[3] In *United States v. Marion,* 404 US 307, 92 S Ct 455, 30 L Ed 2d 468 (1971), there had been no arrest. In *Dillingham v. United States,* 423 US 64, 96 S Ct 303, 46 L Ed 2d 205 (1975), the defendant was arrested on a warrant, charged, released on bond, then indicted by a federal grand jury. *United States v. Palmer,* 502 F2d 1233, 1234 (5th Cir 1974), *rev Dillingham v. United States, supra.*

sufficient in themselves to bring the speedy trial provisions of the Sixth Amendment into play. Obviously being questioned as a suspect and then being released is not the type of arrest with which the court was concerned in *United States v. Marion, supra.*

In this case the material facts are essentially the same as those in *United States v. Costanza,* 549 F2d 1126 (8th Cir 1977). There, FBI agents acting under a search warrant accosted defendant, searched his automobile and then in the privacy of his home strip searched him, read him his *Miranda* rights and released him. In denying defendant's Sixth Amendment claim under *Dillingham,* the court stated that he was not under arrest, charged, or held to answer for the crime at that time, and that the episode therein was not an "arrest or accusation" for the purpose of *Dillingham. United States v. Costanza, supra,* 549 F2d at 1132.

■ We find that defendant's right to a speedy trial was not violated, and turn to his claim under the due process clause of the Fourteenth Amendment. Defendant argues that due process bars his prosecution because he suffered prejudice in presenting his defense as a result of the pre-indictment delay of three and one-half months. The trial judge agreed that the lapse of time caused defendant hardship in presenting his alibi since he could no longer find the identity of the purported other basketball players. The trial judge further noted, however, that the defendant was on notice that he was a suspect and that he failed to preserve any evidence which was available to him. While the possibility of prejudice is present in this instance, that alone will not suffice to sustain a due process claim. Every delay, even the shortest and most necessary, has the possibility of prejudice to the defense.

■ For this reason, the Supreme Court has set out a two factor conjunctive test to determine whether pre-indictment delay is violative of due process: (1)

whether the delay caused substantial prejudice to defendant's right to a fair trial, and (2) whether the delay was taken to gain tactical advantage over the accused. *United States v. Marion, supra,* 404 US at 324; *United States v. Lovasco,* 431 US 783, 790, 795, 97 S Ct 2044, 52 L Ed 2d 752 (1977); *State v. Toth,* 30 Or App 285, 287, 566 P2d 1218, *rev den* (1977).

■ Defendant does not allege nor does the record support a conclusion that the delay was a bad faith attempt by the state to impede his defense. A good faith delay of relatively short duration for investigative purposes does not deprive defendant of due process even though his defense may have been in some measure prejudiced by the passage of time. *United States v. Lovasco* and *State v. Toth, supra.*

■ Defendant's second ground for appeal is that the trial court erred in imposing a minimum sentence, when his offense occurred on August 16, 1977, and the effective date of ORS 144.110(1), which authorizes minimum sentences was October 4, 1977. In *State v. Bussey,* 34 Or App 535, 537-38, 579 P2d 264 (1978), we held that sentencing statute does not apply retroactively. Therefore, defendant's sentence was not subject to the statute.

Remanded for resentencing.