Argued and submitted February 11, affirmed July 8,
reconsideration denied October 27, 1982,
petition for review denied January 11, 1983 (294 Or 391)

STATE OF OREGON,
*Respondent,*

*v.*

BRODERICK WAYNE HUNTER,
*Appellant.*

(No. C 79-12-34618, CA A21334)

647 P2d 943

Stephen A. Houze, Portland, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Warden, Judges.

THORNTON, J.

## THORNTON, J.

Defendant appeals his conviction and sentence for first degree manslaughter. The case was tried to the court on stipulated facts. Specifically, defendant appeals the denial of his motions (1) to exclude evidence of a prior crime, (2) to dismiss because of pre-indictment delay and (3) to dismiss for former jeopardy. Defendant also appeals the trial court's sentencing him as a dangerous offender. We affirm.

This case arose out of a bizarre scheme by the victim, Gerald Schwary, to regain the affections of his estranged girlfriend, Catherine Fedora. To that end, Schwary hired defendant and a companion to kidnap Fedora. The kidnapping attempt occurred at 8:30 a.m. on March 12, 1979. It was foiled by Fedora's successful efforts to escape the two kidnappers.

As a result of information provided by Fedora concerning the kidnappers and the vehicle used, as well as other information, defendant was arrested on March 13, 1979, on a charge of attempted kidnapping. Earlier on March 13, at approximately 2 a.m., Schwary was found lying in the middle of North Columbia Boulevard in Portland in a mortally wounded condition. Following his arrest, defendant was questioned concerning his acquaintance with Schwary. One week later, detectives obtained search warrants for hair and blood samples from defendant in the investigation of the Schwary homicide.

On March 21, 1979, a grand jury returned an indictment charging defendant with second degree kidnapping. At that time, defendant was a suspect in the homicide case. In addition to the attorney appointed to represent him on the kidnapping charge, an attorney was specially appointed on March 29, 1979, to represent defendant on any matters concerning Schwary's killing.

On September 2, 1979, defendant was tried and convicted for second degree kidnapping. On December 17, 1979, the deputy district attorney informed defendant's specially appointed attorney that he would attempt to indict defendant on the charge of homicide in the near future. This position was based on a continuing

investigation specifically, the questioning of defendant's companion, Donald Price. On December 14, 1979, the deputy district attorney and a detective interviewed Price, during which time Price related that he was present when Schwary was shot by defendant. He, however, denied any direct involvement in the shooting. On December 19, 1979, Price was administered a polygraph examination concerning his involvement and participation in the homicide. Following the polygraph, Price was again interviewed by detectives, and he admitted that he had been involved in the kidnapping of Fedora and that he had, in fact, driven the car in that case.[1] Price also stated that defendant's girlfriend had been with the two of them immediately before and after the shooting of Schwary. On December 21, 1979, a detective took Price to the police station for another polygraph examination, which showed some deception concerning his involvement and participation in the shooting of Schwary. Immediately after the administration of that polygraph, Price was taken before the grand jury investigating the death of Schwary.

On the afternoon of December 21, 1979, defendant's girlfriend was interviewed by detectives. After initially denying any knowledge concerning the Schwary incident, she proceeded to relate facts which implicated both Price and defendant in the killing. She appeared before the grand jury on December 26, 1979. Following her testimony an indictment charging both Price and defendant with the death of Schwary was returned.[2]

A pretrial hearing was held on February 15, 1980, to consider defendant's motion to exclude any reference to the kidnapping incident in the homicide case and to dismiss the case on the grounds of pre-indictment delay. The court denied both motions. The deputy district attorney testified that he waited until after the kidnapping conviction to indict on the homicide charge, because, prior to December, 1979, he had had insufficient evidence of defendant's

---

[1] The detective in charge of the homicide case testified that, before December, 1979, he believed Price possessed knowledge of the entire criminal affair but that Price was not necessarily a suspect in either the kidnapping or homicide case.

[2] The indictment charged defendant with murder and felony murder. The felony murder count was based on allegations that Price and defendant committed robbery in the first degree of Schwary and that in the course of the robbery they shot and killed Schwary.

involvement. He denied that he had chosen to wait for tactical reasons.

On April 29, 1980, defendant moved to dismiss the murder indictment on the ground of former jeopardy, alleging that the kidnapping and homicide offenses constituted a single criminal episode.[3] At a hearing on the motion, the detective and deputy district attorney in charge of the homicide case testified in essence that, although from the start they had suspected defendant was involved in the murder, there was insufficient evidence of such involvement until after codefendant Price came forward in December, 1979. The court denied the motion to dismiss.

On March 13, 1981, defendant agreed to enter into a stipulation for trial to the court on the basis of the police reports, with the understanding that the court would find defendant guilty of a lesser included offense of first degree manslaughter. A second count of felony murder was to be dismissed. The agreement was adopted by the court. Defendant was sentenced pursuant to the dangerous offender statute, ORS 161.725 -. 735, to an indefinite term, with a maximum of 30 years. A minimum sentence of five years was ordered under ORS 161.610 because of the use of a firearm during the commission of the homicide.

■ Defendant first contends that the trial court erred in denying his "motion in limine" to exclude evidence of the kidnapping from the homicide trial. The trial court ruled that evidence of the kidnapping incident was admissible as tending to show motive. The court, however, ruled that evidence of the actual conviction itself and the judgment of conviction would be excluded. We conclude that the probative value of this evidence outweighed any prejudicial effect it might have had and was admissible. *State v. Miller,* 53 Or App 493, 632 P2d 493 (1981); *State v. Hockings,* 29 Or App 139, 562 P2d 587, *rev den* 279 Or 301 (1977), *cert den* 434 US 1049 (1978).

Defendant next argues that the trial court erred in denying his motion to dismiss for pre-indictment delay. He maintains that the nine and one-half months between the

---

[3] No issue is raised on this appeal concerning the timeliness of the motion to dismiss. *See* ORS 135.470(2); ORS 135.520.

homicide on March 13, 1979, and the indictment on December 26, 1979, was a delay caused by the state to secure an unfair advantage over him and caused him substantial prejudice in violation of his right to due process.

In *State v. Serrell,* 265 Or 216, 507 P2d 1405 (1973), the court established a two-part requirement for a defendant to prove his right to due process was prejudiced by a pre-indictment delay. There must be a showing of substantial prejudice to the defendant's right to a fair trial and a showing that the delay was an intentional device to gain tactical advantage over the defendant. *State v. Serrell, supra; State v. Harris,* 37 Or App 431, 436-37, 587 P2d 498 (1978). Defendant failed to prove that the pre-indictment delay was an intentional device to gain a tactical advantage. After hearing testimony of the deputy district attorney in charge of the homicide case, the trial court found as fact that the delay in indicting defendant was not intentional and was not the result of any improper motive. The deputy district attorney testified that the delay was caused by the lack of evidence prior to December, 1979. The findings of fact of the court, supported by the evidence in this case, are binding on appeal. Or Const, Art VII (Amended) § 3; *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). Further, as the trial court found, prejudice to defendant from the delay was minimal because he knew from the outset that he was a suspect in the homicide case and was provided special counsel to protect his interests. *See State v. Harris, supra,* 37 Or App at 436. *See also United States v. McDonald,* 456 US 1, 102 S Ct 1497, 71 L Ed 2d 696 (1982). The trial court properly denied the motion.

Defendant also assigns as error the denial of his motion to dismiss for former jeopardy. He argues that under *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972), and the "Boyd/Bishop rule"[4] the kidnapping charge and homicide charge constitute the "same act or transaction" and that the prosecutor knew or reasonably should have known of the facts relevant to the homicide charge at the time of the kidnapping prosecution. Defendant contends that

---

[4] *State v. Boyd,* 271 Or 558, 533 P2d 795 (1975); *State v. Bishop,* 16 Or App 310, 518 P2d 177 (1974).

the homicide prosecution violates Article I, section 12 of the Oregon Constitution and the Fifth Amendment to the United States Constitution.[5]

In *Brown*, the Supreme Court construed Oregon Constitution, Article I, section 12, to mean that a second prosecution is for the "same offense," and therefore constitutionally barred, if the charges arise out of the same transaction and could have been tried in the same court and if the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original charge. The continuing validity of *Brown* as constitutionally requiring joinder of charges has been questioned elsewhere and need not be debated here. *See State v. Knowles,* 289 Or 803, 618 P2d 1245 (1980) (particularly the specially concurring opinion of Tanzer, J.); *State v. Paquin,* 55 Or App 676, 639 P2d 694 (1981), *rev den* 292 Or 863 (1982); *State v. Yock,* 49 Or App 749, 621 P2d 592 (1980), *rev den* 290 Or 727 (1981). For reasons which follow, we hold that the prosecution of defendant for homicide is not barred by either Article I, section 12 or ORS 131.515(2).

We first examine defendant's statutory claim under ORS 131.515(2).[6] We stated in *State v. Yock, supra,*

---

[5] Although defendant refers to the federal Constitution, Amendment V, none of the cases cited by defendant was decided on Fifth Amendment grounds, nor does defendant apply this provision in his argument. We construe defendant's argument to be based on Article I, section 12, Oregon Constitution. Further, defendant does not specifically argue that ORS 131.515(2) bars the prosecution for homicide. He did, however, refer to ORS 131.515(2) at trial and on appeal and makes reference to that statute as it was construed in the case law cited. *See, e.g., State v. Boyd, supra.* Oregon case law on the subject has also interrelated the statutory and constitutional approaches. *State v. Knowles,* 289 Or 813, 825, 618 P2d 1245 (1980) (specially concurring opinion of Tanzer, J.). We, therefore, consider both Article I, section 12 and ORS 131.515(2) in deciding this case.

[6] ORS 131.515 provides:

"Except as provided in ORS 131.525 and 131.535:

"(1) No person shall be prosecuted twice for the same offense.

"(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court.

"(3) If a person is prosecuted for an offense consisting of different degrees, the conviction or acquittal resulting therefrom is a bar to a later prosecution for the same offense, for an inferior degree of the offense, for an attempt to commit the offense or for an offense necessarily included therein.

49 Or App at 753, that, to be entitled to the protection afforded in subsection (2), the defendant must establish all three of the provision's essential elements: (a) the separate prosecutions must be for two or more offenses based on the same criminal episode, (b) the offenses must be reasonably known to the appropriate prosecutor at the time of the commencement of the first prosecution and (c) proper venue must be shown in a single court. Here, neither (a) nor (b) has been satisfied.

The homicide charge did not arise out of the "same criminal episode" as the kidnapping charge. ORS 131.505(4). As the trial court noted, (1) the victims were different, (2) the locations of the crimes were different, (3) there was a 17-hour period between the two offenses and (4) the criminal objectives were different. The Fedora kidnap attempt ended when Fedora successfully thwarted the abduction. About 17 hours later, Price and defendant met Schwary. At that time, defendant shot and killed Schwary and took over $3,000 in cash that Schwary was carrying. While the homicide might not have occurred but for the kidnapping, that does not make it part of the kidnapping episode. The link between the homicide and the kidnapping is that the homicide occurred after the parties involved in the kidnapping conspiracy met to discuss the kidnapping and payment for it. The meeting began as an attempt by defendant to obtain the pre-arranged payment of $600 for the kidnapping and ended in defendant's shooting Schwary and robbing him of cash he was known to carry. The two offenses had wholly different elements and occurred independently. *State v. Yock, supra; State v. Oliver,* 26 Or App 331, 552 P2d 562 (1976).

In addition, the homicide offense was not "reasonably known" to the prosecutor at the time of the kidnapping prosecution. The legislative history of the term "reasonably known" reveals the following:

" 'Subsection (2) provides two protections for the prosecutor. The first is that the offenses must be known to the prosecutor. The purpose of this is to prevent the accused

---

A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the judgment of conviction is subsequently reversed or set aside."

from concealing his total criminal activity within a criminal episode from the prosecutor and then asserting double jeopardy if the prosecutor should later discover and proceed against the remaining offenses.

" 'The Commission discussed the problem of the amount of knowledge that would be necessary on the part of the prosecutor. This raises a difficult issue in that the prosecutor may not have sufficient evidence to prosecute but still have knowledge that the offense exists. This would place the prosecutor in the dilemma of waiting for more evidence before he proceeded against the accused or foregoing the offense that he lacks. sufficient evidence on.

" 'The modifying adverb, "reasonably," was purposely inserted before the word "known" to accomplish the above two objectives. Hopefully, this would give the courts the power to determine if under the circumstances the district attorney should have included the offense in the criminal episode and hence in the former prosecution.' " Final Draft and Report of the Criminal Law Revision Commission, p 20 (1972).

As discussed earlier, although the deputy district attorney suspected that defendant was involved in the Schwary homicide, he did not feel he had sufficient evidence to go forward with a prosecution until December, 1979, when Price and defendant's girlfriend came forward with evidence inculpating defendant. Under the circumstances, the deputy district attorney did not reasonably know of the homicide charge on March 21, 1979, when the indictment for second degree kidnapping was obtained or when that charge was tried on September 2, 1979. *See also State v. Allen,* 16 Or App 456, 460, 518 P2d 1332, *rev den* (1974) (discussing the degree of knowledge a prosecutor must possess under the third criteria of the *Brown* test).

If the test in *Brown* is of constitutional origin, the above discussion of ORS 131.515(2) applies equally to defeat defendant's Article I, section 12 claim. *State v. Yock, supra,* 49 Or App at 754. If, however, the *Brown* joinder requirement is not of constitutional origin, we are apparently left with a "same evidence" test, *State v. McDonald,* 231 Or 48, 365 P2d 494 (1961), *cert den* 370 US 903 (1962), coupled, perhaps, with an inquiry into whether the legislature intended the offenses to be separate. *State v. Knowles, supra; State v. Paquin, supra,* 55 Or App at 681, *State v.*

*Yock, supra,* 49 Or App at 754. Here, none of the elements of the kidnapping was necessary to prove the homicide, and it seems clear that the offenses were intended to be separate. Therefore, Article I, section 12 does not operate to bar the homicide prosecution.

Defendant's last assignment of error concerns his sentence under ORS 161.725 as a dangerous offender. After trial on the stipulated police reports, a presentence report and a psychiatric examination through the Mental Health Division was ordered pursuant to ORS 161.735(1). Prior to defendant's admission to the Oregon State Hospital for evaluation by Dr. Weissert, defendant's attorney wrote that doctor, indicating that he objected to the examination as an unlawful attempt to compel self-incriminating information. He advised defendant to remain silent during the examinations and directed Dr. Weissert to refrain from interrogating or otherwise communicating with defendant.

As a result of this objection by counsel and defendant's silence during Dr. Weissert's examinations, no formal interview or physical examination was given. The doctor filed a report based upon defendant's penitentiary records and information from the district attorney. He testified that, absent a full psychiatric examination, he was unable adequately to determine whether defendant was suffering from a severe personality disorder indicating a propensity toward criminal activity, ORS 161.735(3), but he did state that defendant was currently dangerous and that defendant's recent criminal activity exhibited a trend toward dangerous and aggressive activity. The presentence report recited, *inter alia,* a history of engaging in fights and recommended that the court explore the possibility of invoking the dangerous offender statute and that defendant be incarcerated for a lengthy period of time due to the severity of the offense and the threat defendant presented to the security of the community.

The court found that defendant had a personality disorder indicating a propensity toward criminal activity. Specifically, the court found:

> "The nature of this killing of Mr. Schwary, the nature of the kidnap attempt he was involved in, all of these indicate to me a severe personality disorder indicating a

propensity toward criminal activity, and in this case I am convinced beyond a reasonable doubt.

" * * * * *

"I do find that Mr. Hunter is extremely dangerous and he is capable of committing a savage and wanton crime of the most serious nature without evidently the slightest remorse or hesitation. There is nothing to indicate that he would have any more reluctance to commit such a crime again for simply material gain than he has the last time, and I think he should be confined as long as possible for the protection of the public."

■ Defendant contends, first, that the dangerous offender statute is unconstitutional as violative of due process, because it does not require proof beyond a reasonable doubt on the issue of dangerousness and propensity toward future criminal activity. This contention was rejected in *State v. Sanders,* 35 Or App 503, 507, 582 P2d 22 (1978), *rev den* 285 Or 195 (1979). In any event, the trial court found beyond a reasonable doubt that defendant had "a severe personality disorder indicating a propensity toward criminal activity."

Defendant next argues that, before he could be sentenced under the statute, a psychiatrist had to make findings, including "an evaluation of whether the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity." ORS 161.735(3). Here, because of defendant's refusal to cooperate with a psychiatric examination, Dr. Weissert was unable to make the precise findings referred to in the statute. In *State v. Klenk,* 19 Or App 684, 687, 528 P2d 1092 (1974), a case involving psychiatric findings under ORS 161.735, we noted:

"It is true that the examining psychiatrist's diagnosis as such was not framed in the legal terminology of the statute, as the defendant asserts. It is also true that the psychiatric report did not define defendant's disorder as being severe nor did it include in the words of the statute a statement that defendant's personality disorder would create a propensity for defendant to commit criminal acts. However, the findings of the examining psychiatrist tended to support such a conclusion; additionally, the psychiatrist's evaluation and conclusions are not binding upon

the judge under the provisions of ORS 161.725 and 161.735. The court is free to make its own determination as to the dangerousness after reviewing the psychiatric evidence, the presentence report and other evidence properly available to it. *See, e.g., State v. Skerl,* 250 Or 346, 442 P2d 610 (1968); *State v. Siens,* 12 Or App 97, 504 P2d 1056, Sup Ct *review denied* (1973); *State v. Sands,* 10 Or App 438, 499 P2d 821, Sup Ct *review denied* (1972)."

ORS 161.735(6) requires the court to consider the presentence report, the evidence in the case or in the sentencing hearing, as well as the psychiatric report, in deciding whether a defendant is a dangerous offender. The presentence report recommended a lengthy period of incarceration. The court was authorized to consider defendant's recent criminal activity, including convictions for forgery, second degree kidnapping, resisting arrest (which occurred while defendant was out on bail on the kidnapping charges and involved an assault on a police officer), and first degree manslaughter, as well as the circumstances of Schwary's death in pronouncing sentence.

■    We conclude that there was sufficient evidence for the trial court to find that defendant came within the provisions of the dangerous offender statute. *See State v. Sanders, supra,* 35 Or App at 508; *State v. Klenk, supra,* 19 Or App at 688. Moreover, having refused to be interviewed by the psychiatrist, notwithstanding the complete immunity guaranteed by ORS 161.735(4), defendant cannot be heard to argue now that he was denied "an evaluation [by the psychiatrist] of whether the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity." ORS 161.735(3).

Affirmed.