Argued and submitted September 17, 1982, reversed and remanded for trial
March 2, 1983

# STATE OF OREGON,
*Appellant,*

*v.*

# RANDALL CRUMAL,
*Respondent.*

(46001; CA A24218)

659 P2d 977

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Marilyn McManus, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant was charged with one count of burglary in the first degree, ORS 164.225, two counts of assault in the fourth degree, ORS 163.160, and one count of criminal mischief in the second degree. ORS 164.354. The state appeals from an order dismissing the indictment on the ground of statutory former jeopardy. ORS 131.515. We reverse and remand for trial.

On the night of July 15, 1981, police officer Sawyer was dispatched to a Lincoln County residence to investigate a reported fight involving defendant and Sabrina Vinson. Vinson told the officer that while she was with Mark Roggenstein in Roggenstein's bedroom, defendant broke through the room's glass door and struck and cut Roggenstein. Roggenstein, who was seriously wounded, was taken to a local hospital. Officer Sawyer found defendant, angry and apparently intoxicated, walking nearby and persuaded him to go to the hospital for treatment of his cuts.

At the hospital, defendant became irate, said he did not want to talk to the police and stated his intention to kill Roggenstein and get even with Vinson. Outside the emergency room door, he argued with a man who, according to defendant, had looked "funny" at him. He was restrained by police officers when he began to chase the man. Inside, defendant was belligerent, calling most of those he encountered "fuckers" and otherwise disturbing the patients. He was repeatedly restrained by police officers and hospital personnel from forcing his way into the room in which Roggenstein was being examined. At one point, he entered the room of another patient and disrupted his treatment. Later, he argued with Vinson and attempted to attack Roggenstein as he left the hospital.

On July 17, 1981, defendant was charged by complaint in district court with two counts of disorderly conduct, ORS 166.025, because of the disturbance at the hospital. On July 20, 1981, he was indicted on one count of burglary in the first degree and one count of assault in the fourth degree, as a consequence of the fight at Roggenstein's home. The disorderly conduct case was set for trial, and the burglary/assault case was transferred to circuit court. On December 1, 1981, a new indictment based on the

incident at Roggenstein's home charged defendant with a second count of assault in the fourth degree and a new count of criminal mischief in the second degree and alleged that criminal mischief (rather than assault) was the crime defendant intended to commit when he entered the residence.

On December 4, 1981, defendant was tried on the disorderly conduct charges. During a pretrial conference, the judge ruled that evidence of the incident at Roggenstein's home would be allowed to show why defendant and Roggenstein were at the hospital. At the hearing on defendant's motion to dismiss the indictment, the deputy district attorney testified that he had been allowed to refer to the earlier episode to show defendant's state of mind but not to bring out details of the burglary. Following his conviction on the disorderly conduct charges, defendant moved to dismiss the indictment charging him with burglary, assault and criminal mischief on the ground of double jeopardy, asserting that those crimes and the disorderly conduct charges "arose out of the same act and transaction." The circuit court granted the motion.

■　　ORS 131.515 specifies when a previous prosecution will bar subsequent prosecutions. The relevant subsection provides:

> "(2)　No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

To be entitled the protection afforded in this subsection, the defendant must establish all three elements stated: (1) the separate prosecutions must be for two or more offenses based on the same criminal episode; (2) the offenses must be known to the appropriate prosecutor at the commencement of the first prosecution; and (3) proper venue in a single court must be shown. *State v. Hunter,* 58 Or App 99, 106, 647 P2d 943 (1982) (citing *State v. Yock,* 49 Or App 749, 753, 621 P2d 592 (1980), *rev den* 290 Or 727 (1981)).

The state contends that defendant has failed to establish that charges involved in the separate prosecutions were based on the same criminal episode. ORS 131.505(4) defines "criminal episode" as follows:

" 'Criminal episode' means continuous and uninter-rupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such con-duct is directed to the accomplishment of a single criminal objective."

In *State v. Boyd,* 271 Or 558, 565-66, 533 P2d 795 (1975), the Supreme Court held that the phrase "criminal episode" in ORS 131.505(4) and 131.515(2) is synonymous with the phrase "same act or transaction" defined with respect to joinder under ORS 132.560(2).[1] In *State v. Fitzgerald,* 267 Or 266, 273, 516 P2d 1280 (1973), the court explained:

"* * * [T]wo charges arise out of the same act or trans-action if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge." 267 Or at 273.

We conclude that the charges in the indictment (*i.e.,* bur-glary, assault and criminal mischief) and the disorderly conduct charges were not part of the "same criminal epi-sode" under ORS 131.515(2).

First, different places and times were involved. The burglary/assault/criminal mischief occurred *at Roggenstein's home* approximately 40 to 45 minutes before the distur-bance *at the hospital.* Furthermore, the record indicates that defendant agreed to go to the hospital at the urging of Officer Sawyer and that, at the time that conversation took place, the incident at Roggenstein's home was over. Defen-dant does not contend that he followed Roggenstein to the hospital for the purpose of continuing the assault.

■      Second, the circumstances of the two events were different. Roggenstein was the victim of the burglary/assault/criminal mischief; the "public" was the victim of the hospital disturbance. *See State v. Hunter, supra.* The complaint charging defendant with disorderly conduct, ORS 166.025, alleged that defendant "unlawfully and recklessly create a risk of public inconvenience and alarm" at the

---

[1] ORS 132.560(2) provides:

"When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

hospital "by engaging in tumultuous and threatening behavior" and "by making unreasonable noise."[2] Patients, staff and others, not Roggenstein alone, were targets for defendant's behavior. Although, as the trial court found, the "same animosity" may have existed in both incidents, that is but one factor to consider in deciding whether defendant's conduct over the course of the evening was part of the same criminal episode. In light of the circumstances of defendant's behavior at the hospital, that link between the two episodes is not compelling. For much the same reasons, we cannot say that defendant's earlier burglary and attack on Roggenstein and his conduct in the hospital were directed toward "the accomplishment of a single criminal objective." ORS 131.505(4).

■ ■    Third, the elements of the charges are different and the details are not cross-related. The facts of each episode could be adequately shown without reference to the facts of the other. The fact that certain details of the events at Roggenstein's home were *admissible* at trial on the disorderly conduct charges does not mean that joinder is required. *See State v. Boyd, supra,* 271 Or at 566; *State v. Fitzgerald, supra,* 267 Or at 272-73. The offenses alleged in the indictment and the disorderly conduct charge occurred independently, were not part of a continuous and uninterrupted course of conduct and have wholly different elements. Accordingly, we hold that ORS 131.515(2) does not require that the indictment on the burglary, assault and criminal mischief charges be dismissed.

■    We also hold that defendant's argument based on the constitutional guarantee against double jeopardy is without merit.[3]

---

[2] ORS 166.025 provides, in pertinent part:

"(1) A person commits the crime of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

"(a) Engages in fighting or in violent, tumultuous or threatening behavior; or "(b) makes unreasonble noise; * * *

"* * * * *."

[3] Article I, section 12, of the Oregon Constitution, provides:

"No person shall be put in jeopardy twice for the same offense, nor be compelled in any criminal prosecution to testify against himself."

Reversed and remanded for trial.

In *State v. Brown*, 262 Or 442, 497 P2d 1191 (1972), the court construed section 12 to mean that a second prosecution is for the "same offense," and is therefore constitutionally barred, if the charges met the test thereafter enacted as ORS 131.515(2). The continuing validity of that construction has been recently questioned. *See State v. Knowles*, 289 Or 813, 618 P2d 1245 (1980). If the test in *Brown* is of constitutional origin, the above discussion of ORS 131.515(2) applies equally to defeat defendant's constitutional claim. *State v. Hunter*, 58 Or App 99, 107, 647 P2d 943 (1982). If, on the other hand, the *Brown* joinder requirement is not of constitutional origin, we are apparently left with a "same evidence test," *State v. McDonald*, 231 Or 48, 365 P2d 494 (1961), *cert den* 370 US 903 (1962), together with, perhaps, an inquiry whether the offenses were intended to be separate. *See State v. Paquin*, 55 Or App 676, 681, 639 P2d 694, *rev den* 292 Or 863 (1982). In this case, none of the elements of the charges in the indictment (burglary/assault/criminal mischief) is necessary to prove the disorderly conduct charges, and it is clear that the offenses are intended to be separate.