Submitted on record and briefs March 23, affirmed July 5, petition for review
denied September 6, 2006 (341 Or 366)

## STATE OF OREGON,
*Respondent,*

*v.*

## MARSHALL ALVIN BALDWIN,
*Appellant.*

### 0204-32360; A120366

138 P3d 867

James N. Varner filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Laura S. Anderson, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from convictions on four counts of first-degree forgery by uttering. ORS 165.013(1)(a)(D); ORS 165.007(1)(b). He assigns error to the trial court's denial of his motion, based on ORS 131.515(2) and Article I, section 12, of the Oregon Constitution, to dismiss on grounds of former jeopardy. In particular, defendant argues that a prior prosecution (in Columbia County) of charges of forgery by falsely making an instrument and aggravated theft barred this subsequent (Multnomah County) prosecution. We conclude that defendant's statutory and constitutional challenges fail because defendant failed to establish that, at the time the Columbia County prosecution commenced, the Columbia County prosecutor knew or should have known of the offenses for which defendant was convicted in this case. Accordingly, we affirm.

The parties stipulated, for purposes of defendant's motion to dismiss, to the following material facts: Defendant was employed as a bookkeeper for a business in Columbia County. Over the course of several weeks, defendant wrote "numerous unauthorized checks," payable to himself, from the business's accounts. When questioned by Columbia County authorities, defendant admitted to "writing the checks and negotiating them in various ways."[1] However, nothing in the stipulated facts specifies the total number of the "numerous unauthorized checks," the check numbers of the forged checks, or, other than a recitation that some of the checks were for $1,000, the specific dollar amounts of the checks.

On October 9, 2001, defendant was indicted in Columbia County on three counts of first-degree aggravated theft, ORS 164.057(1),[2] and four counts of first-degree forgery

---

[1] Although an investigating officer's knowledge is not necessarily imputed to a prosecutor, *see State v. Knowles*, 289 Or 813, 822-23, 618 P2d 1245 (1980), the record in this case makes it clear that whatever information the investigating officer had was actually communicated to, and, thus, known by, the Columbia County prosecutor.

[2] ORS 164.057(1) provides:

"A person commits the crime of aggravated theft in the first degree, if:

by falsely making, ORS 165.007(1)(a).[3] The theft charges alleged that defendant committed theft between August 6 and 27, 2001.[4] However, those charges did not identify the individual checks that formed the bases of the charges or the dollar amounts of those checks.

The forgery counts alleged that defendant falsely made four specific checks, identified by check number as Washington Mutual bank numbers 1054 and 1060, and U.S. Bank numbers 2206 and 2245, but did not specify the dollar amounts of the checks. The indictment did not charge defendant with uttering any documents that he knew to be forged.

On October 10, 2002, defendant pleaded guilty in Columbia County to two counts of aggravated theft. The remaining theft charge and the four charges of forgery by falsely making were dismissed.

Meanwhile, authorities in Multnomah County had learned that defendant had negotiated four forged checks in

---

"(a)  The person [commits theft in the first degree] with respect to property
* * * and

"(b)  The value of the property in a single or aggregate transaction is $10,000 or more."

ORS 164.015, in turn, defines "theft," in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"* * * * *

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

[3] ORS 165.007(1) provides two independent methods of committing forgery. The first is to "[f]alsely make[ ], complete[ ] or alter[ ] a written instrument[.]" ORS 165.007(1)(a). The second is to "[u]tter[ ] a written instrument which the person knows to be forged." ORS 165.007(1)(b).

To "falsely make" an instrument means "to make or draw a complete written instrument in its entirety * * * which purports to be an authentic creation of its ostensible maker, but which is not * * * because * * * the ostensible maker did not authorize the making or drawing thereof." ORS 165.002(4). To "utter" an instrument means "to issue, deliver, publish, circulate, disseminate, transfer or tender a written instrument * * *." ORS 165.002(7).

[4] The three theft counts were identical and alleged that "defendant between August 6, 2001 and August 27, 2001, in the County of Columbia, State of Oregon, did unlawfully and knowingly commit theft of money, of the total value of $10,000 or more, the property of Tom Dannison, dba Turner Well Drilling. * * * The state further alleges that the amount of loss caused by the defendant [in the aggregate] was more than $50,000[.]"

Multnomah County, including one check (U.S. Bank number 2245) that was the subject of one of the Columbia County false making charges. Consequently, on April 30, 2002, defendant was indicted in Multnomah County on four counts of first-degree forgery by uttering. Each of those counts specifically identified the check that had been uttered; only one of the four counts, the one pertaining to U.S. Bank check number 2245, involved a check that had been specifically identified in the pending Columbia County charges.

On October 24, 2002, two weeks after his Columbia County plea, defendant moved, pursuant to ORS 131.515[5] and Article I, section 12, of the Oregon Constitution,[6] to dismiss the Multnomah County indictment on the ground of former jeopardy. Defendant's motion asserted that he had already pleaded guilty to "the same conduct which forms the basis" of the charges.

The state responded, recited the facts set forth above, and offered several exhibits. Those exhibits included the Columbia County indictment and judgment, as well as an affidavit from the Multnomah County prosecutor. In that affidavit, the Multnomah County prosecutor stated that "[the Columbia County prosecutor] told me that he was unaware that four of [the] checks forged by [defendant] had been uttered in Multnomah County * * *." Defendant did not object to admitting the exhibits, including the affidavit, and did not offer any additional facts or evidence of his own. Instead, defendant stipulated to the facts recited in the state's responsive memorandum.

Based on the stipulated facts and the exhibits, the trial court denied defendant's motion. In particular, the trial court concluded:

---

[5] ORS 131.515 provides, in part:

"(1) No person shall be prosecuted twice for the same offense.

"(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

[6] Article I, section 12, of the Oregon Constitution provides that "[n]o person shall be put in jeopardy twice for the same offence[.]"

"[T]he [Columbia County] prosecutor, knowing that there were checks forged, was not aware of the four checks in Multnomah County. For [defendant] to be successful, [the Columbia County prosecutor] would have to have been aware. * * * [T]he prosecutor could not have known about those four additional checks * * *."

After a stipulated facts trial, defendant was convicted on all four counts of forgery by uttering. ORS 165.007(1)(b). Defendant appeals, renewing both his statutory and constitutional arguments.

■■ Defendant's statutory argument is based on ORS 131.515(2), which provides:

"No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

As we explained in *State v. Fore*, 185 Or App 712, 715, 62 P3d 400 (2003), a former jeopardy challenge under that statute has three elements:

"(1) [T]he separate prosecutions are for two or more offenses that are part of the same criminal episode; (2) the offenses were known to the prosecutor when the first prosecution was commenced; and (3) venue was proper in a single court."

"It is a defendant's burden to prove each element of former jeopardy, and, normally, a failure to prove any element would doom his former jeopardy challenge." *State v. Lyons*, 161 Or App 355, 360, 985 P2d 204 (1999) (citations omitted). We will uphold the trial court's factual findings if there is any evidence to support them. *Fore*, 185 Or App at 716.

The state asserts that neither the first ("same criminal episode") nor the second ("reasonably known") elements are satisfied in this case.[7] As described below, we affirm the trial court's determination that defendant failed to establish

---

[7] The state does not dispute that venue for the offenses tried in Multnomah County would have been proper in Columbia County. We imply no view on that matter.

that the present forgery by uttering offenses were "reasonably known" to the Columbia County prosecutor when the former prosecution commenced. Because our conclusion in that regard is dispositive of defendant's statutory argument, we need not, and do not, address the state's alternative contention.

We note, at the outset, that the proper meaning of "reasonably known" in ORS 131.515(2) may be uncertain—at least in the sense that different cases appear to have construed that term differently. In *State v. Knowles*, 289 Or 813, 618 P2d 1245 (1980), some aspects of the court's analysis, and of the legislative history invoked in support of that analysis, indicate that "reasonably known" means that the prosecutor had *actual* knowledge that the offense had been committed *and* reasonably sufficient evidence to initiate a prosecution. In *Knowles*, the defendant, who had previously pleaded guilty to unlawful possession of an elk, argued that ORS 131.515(2) barred a subsequent prosecution for unlawfully taking a deer, where both offenses were part of the same criminal episode.[8] The defendant "concede[d] that there [was] no evidence that the district attorney had *actual* knowledge" of the deer-related offense at the time that the defendant was prosecuted for the elk-related offense. *Knowles*, 289 Or at 823 (emphasis in original). Nevertheless, the trial court granted the motion to dismiss and, in doing so, necessarily found that the deer-related offense was "reasonably known" to the prosecutor at the time that the prosecution for the elk-related offense was commenced. *Id.*

The Supreme Court concluded that the trial court had erred. In so holding, the court observed that "the adverb 'reasonably' requires attention," *id.* at 824, and then quoted the following legislative history as "yield[ing] the reason[s] for [the] insertion of that adverb":

" 'Subsection (2) provides two protections for the prosecutor. The first is that the offenses must be known to the prosecutor. The purpose of this is to prevent the accused

---

[8] The defendant pleaded guilty to the elk-related offense that was charged by a citation issued by an Oregon State Police game officer. The subsequent prosecution for the deer-related offense, a felony, was initiated by a district attorney's information. *Knowles*, 289 Or at 815-16.

from concealing his total criminal activity within a criminal episode from the prosecutor and then asserting double jeopardy if the prosecutor should later discover and proceed against the remaining offenses.

" 'The Commission discussed the problem of the amount of knowledge that would be necessary on the part of the prosecutor. *This raises a difficult issue in that the prosecutor may not have sufficient evidence to prosecute but still have knowledge that the offense exists. This would place the prosecutor in the dilemma of waiting for more evidence before he proceeded against the accused or foregoing the offense that he lacks sufficient evidence on.*

" *'The modifying adverb, "reasonably," was purposely inserted before the word "known" to accomplish the above two objectives.* Hopefully, this would give the courts the power to determine if under the circumstances the district attorney should have included the offense in the criminal episode and hence in the former prosecution.' "

*Id.* (quoting Commentary to Criminal Law Revision Commission, Final Draft and Report, 20 (Nov 1972)) (emphasis added).

The court then determined that there was no evidence in the record "from which it could be found that the district attorney 'reasonably' knew of the offense concerning the deer at the time defendant was prosecuted with respect to the elk." *Id.* Consequently, the court concluded that, even under the standard of review prescribed by *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), there was "no evidence to support the trial court's implicit finding of the requisite knowledge on the part of the prosecutor." *Knowles*, 289 Or at 824.

*Knowles* is, frankly, somewhat puzzling. On one hand, the legislative history that the court invoked indicates that an offense is "reasonably known" to the prosecutor when (1) the prosecutor has actual knowledge that the offense has been committed, and (2) the prosecutor has a "reasonably" sufficient evidentiary basis for initiating a prosecution. That is, actual knowledge is a necessary but insufficient condition to an offense being "reasonably known" for purposes of ORS 131.515(2). On the other hand, if the lack of actual knowledge necessarily precludes a determination that an offense is "reasonably known," then the Supreme Court could easily

and explicitly have said that in *Knowles*—where, as noted, the defendant conceded that there was no evidence that "the district attorney had *actual* knowledge * * *." 289 Or at 823 (emphasis in original). Indeed, the court's literal emphasis of the term "actual" is especially enigmatic.

Our own case law is similarly ambivalent. For example, in *State v. Hunter*, 58 Or App 99, 106-07, 647 P2d 943 (1982), *rev den*, 294 Or 391 (1983), we quoted the same legislative history quoted in *Knowles* and then held that, at the time that the defendant was prosecuted for kidnapping, a subsequently prosecuted homicide arising out of the same criminal episode was not "reasonably known" to the prosecutor because, "although the deputy district attorney suspected that defendant was involved in [the homicide], he did not feel he had sufficient evidence to go forward with a prosecution" for that offense until two witnesses "came forward with evidence inculpating defendant." *See also State ex rel Juv. Dept. v. Nelson*, 124 Or App 562, 566, 863 P2d 497 (1993), *rev den*, 319 Or 81 (1994) (citing *Hunter*, 58 Or App at 106-07) ("[A] prosecutor's 'suspicion' that other wrongful acts may have been perpetrated is not sufficient to invoke the former jeopardy rule.").

Conversely, we have, on occasion, stated without amplification that, for purposes of ORS 131.515(2), "reasonable knowledge exists if the prosecutor knew *or should have known* of both offenses" at the time of the original prosecution. *State v. Lowery*, 95 Or App 583, 586, 770 P2d 923 (1989) (emphasis added); *see also State v. Gardner*, 71 Or App 590, 593, 693 P2d 1303 (1985) ("A statutory bar to a separate prosecution * * * exists if the prosecution *reasonably should have known* the facts relevant to [the] charge" at the time of the commencement of the first prosecution (emphasis added)). That is, we conflated and equated the statutory "reasonably known" requirement with the constitutional standard, for purposes of Article I, section 12, *viz.*, that "the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution." *State v. Brown*, 262 Or 442, 457-58, 497 P2d 1191 (1972).[9]

---

[9] We address the application of that constitutional standard below. *See* 206 Or App at 654.

In sum, different cases—or, at least, aspects of their analyses—appear to endorse qualitatively distinct and divergent constructions of "reasonably known": (1) the prosecutor actually knew both of the commission of the offense *and* of a "reasonably" sufficient evidentiary basis for initiating the prosecution; (2) the prosecutor either knew or reasonably should have known of the offense; or (3) the prosecutor had something more than "suspicion" that the defendant had committed the offense—which, arguably, may fall somewhere between the actual knowledge requirement of the first formulation and the alternative "reasonably should have known" aspect of the second.

■      That divergence is, frankly, disconcerting—and may, in some other case, require resolution. Here, however, we need not select from among, or "reconcile," the various formulations because defendant cannot prevail under any of them. That is, defendant failed to establish that the Multnomah County forgery by uttering offenses were "reasonably known" to the Columbia County prosecutor at the time that the Columbia County prosecution commenced.

The stipulated facts establish that, before the Columbia County prosecution was commenced, the prosecutor knew that defendant had falsely made "numerous unauthorized checks" and that at least some of those checks had been negotiated. The stipulated facts do not identify by check number or date or amount any of the checks that had been falsely made or negotiated. The Columbia County indictment does identify by check number four of the checks that were falsely *made*. However, that indictment does not identify in any fashion any of the individual checks whose *uttering* was a necessary predicate for the aggravated theft charges.[10] Thus, nothing in the stipulated facts or the content of the Columbia County indictment permits, much less compels, a finding that the Columbia County aggravated theft charges involved any of the checks that were the subject of the Multnomah County charges and, thus, that the Columbia

---

[10] Theft requires a defendant to "[t]ake[ ], appropriate[ ], obtain[ ] or withhold[ ] * * * property from an owner thereof[.]" ORS 164.015(1). Thus, as charged in the indictment, defendant could not have committed theft by simply "falsely *making*" checks. Successfully negotiating the checks to a bank and, thus, "taking" the victim's property, was required to complete the theft offense.

County prosecutor, in bringing the aggravated theft charges, actually knew—or even reasonably should have known—of the Multnomah County forgery by uttering offenses.

Defendant argues, nevertheless, that, at the very least, statutory former jeopardy should bar the prosecution of one of the Multnomah County uttering charges because the check that was the subject of that charge (U.S. Bank check number 2245) was also the subject of one of the dismissed forgery by false making charges in Columbia County. Defendant contends that the fact that the two charges involved the same check incontrovertibly establishes that the Multnomah County uttering offense was "reasonably known" to the Columbia County prosecutor at the time of the commencement of the first prosecution.

■   We disagree. As noted, ORS 165.007(1) describes forgery by false making and forgery by uttering as distinct species of forgery. *See* 206 Or App at 646 n 3. Those offenses are not mutually exclusive—and, indeed, they can be (and often are) committed *seriatim*. Each offense can be completed without any reference to the other. Thus, although the Columbia County prosecutor was aware of the false *making* of the four checks identified in the original indictment (including U.S. Bank check number 2245), knowledge of a check's making does not establish knowledge of its subsequent uttering.

Further, even if "reasonably known" in ORS 131.515(2) means "reasonably should have known," defendant was not entitled to prevail. In this case, the Columbia County prosecutor knew that defendant had falsely made "numerous" checks, including U.S. Bank check number 2245, and that defendant had negotiated at least some of those "numerous" checks, resulting in the aggravated theft charges. We are unaware of any principle or precedent that, as a matter of law, compels a finding that, because a prosecutor knew that a defendant had uttered some checks that he or she falsely made, the prosecutor reasonably should have known that the defendant had uttered all such checks. Rather, that determination is appropriately made on a case-by-case basis, and, under the applicable standard of review, *see Fore*, 185 Or App at 716, we cannot say that the trial court

erred. *Cf. Nelson*, 124 Or App at 566 ("[A] prosecutor's 'suspicion' that other wrongful acts may have been perpetrated is not sufficient to invoke the former jeopardy rule.").

■      We turn, finally and briefly, to defendant's constitutional challenge. Article I, section 12, of the Oregon Constitution provides that "[n]o person shall be put in jeopardy twice for the same offence[.]" In *Brown*, 262 Or at 458, the Supreme Court summarized the requirements of a constitutional former jeopardy challenge:

> "[A] second prosecution is for the 'same offense' and is prohibited if (1) the charges arise out of the same act or transaction, and (2) the charges could have been tried in the same court, and (3) the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution."

As with the statutory former jeopardy argument, defendant's constitutional argument fails, at least, on the final component, pertaining to the prosecutor's knowledge. Whatever the proper distinction between the statutory and constitutional standards in that regard, *see* 206 Or App at 649-52, our foregoing discussion demonstrates that the trial court did not err in concluding that defendant had failed to meet his burden of proving that, at the time of the Columbia County prosecution, the prosecutor "reasonably should have known of the facts relevant" to the Multnomah County charges.

Affirmed.